Filed 9/20/18

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| MOSS BROS. TOY, INC.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>ERNESTO RUIZ,<br><br>    Defendant and Respondent. | E067240<br><br>(Super.Ct.No. CIVDS1603069)<br><br>O P I N I O N |

APPEAL from the Superior Court of San Bernardino County.  John M. Pacheco, Judge.  Affirmed.

Fine, Boggs & Perkins, John P. Boggs, David J. Reese, and Roman Zhuk for Plaintiff and Appellant.

Parris Law Firm, R. Rex Parris, Kitty K. Szeto, John M. Bickford, and Eric N. Wilson for Defendant and Respondent.

---

[*]  Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III. C. and D.

## I. INTRODUCTION

Plaintiff and appellant, Moss Bros. Toy, Inc. (MBT), appeals from the order granting defendant and respondent, Ernesto Ruiz's, anti-SLAPP[1] motion, or special motion to strike MBT's entire first amended complaint (FAC) against Ruiz. (§ 425.16, subd. (i).) The FAC alleges MBT is Ruiz's former employer and that Ruiz breached two March 2010 arbitration agreements with MBT by failing to submit Ruiz's employment-related claims against MBT to arbitration, and by instead filing a lawsuit for his employment-related claims against MBT's agent, Moss Bros. Auto Group, Inc. (MBAG), in San Bernardino County Superior Court case No. CIVDS2107201. In this appeal, MBT claims the anti-SLAPP motion was erroneously granted because the FAC is not based on protected activity (§ 425.16, subd. (e)), but is instead based on Ruiz's breach of his March 2010 arbitration agreements with MBT. MBT also claims it demonstrated a probability of prevailing on its claims alleged in the FAC.

We affirm the order granting the anti-SLAPP motion. In the published portion of this opinion, we explain that the entire FAC is based on protected activity, namely, Ruiz's act of filing his lawsuit against MBAG for his employment-related claims in case No. CIVDS2107201—even though the FAC is also based on Ruiz's alleged breach of the 2010 arbitration agreements. In the unpublished portion of this opinion, we explain that

---

[1] "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1; see Code Civ. Proc., § 425.16.) All further statutory references are to the Code of Civil Procedure unless otherwise stated.

MBT failed to demonstrate a probability of prevailing on its claims against Ruiz as alleged in the FAC.

## II.  FACTS AND PROCEDURAL BACKGROUND

A.  *Ruiz's July 2012 Complaint Against MBAG, and MBAG's First Unsuccessful Petition to Compel Arbitration of Ruiz's Employment-related Claims*

In July 2012, Ruiz filed a putative class action complaint against MBAG in case No. CIVDS2107201.  (*Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 838 (*Ruiz I*).)[2]  In that action, Ruiz alleged that MBAG was his employer and that MBAG failed to (1) pay Ruiz and other employees overtime and other wages, (2) provide required meal and rest breaks, (3) provide accurate and complete wage statements, (4) reimburse business expenses, and (5) timely pay final wages.  The complaint also alleged representative claims and sought civil penalties on behalf of Ruiz, other MBAG employees, and the state pursuant to the Labor Code Private Attorneys General Act of 2004 (PAGA).  (Lab. Code, § 2698 et seq.; *Ruiz I*, *supra*, at p. 838.)

In August 2012, MBAG petitioned the trial court to compel arbitration of Ruiz's *individual* employment-related claims, pursuant to an arbitration agreement that MBAG claimed Ruiz had electronically signed on September 21, 2011 (the 2011 agreement).[3]

---

[2]  On our own motion, we take judicial notice of our published decision in *Ruiz I*. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

[3]  MBAG asked the trial court to dismiss Ruiz's putative class action and PAGA claims, as part of its order compelling arbitration of Ruiz's individual claims, on the ground Ruiz had waived his right to bring PAGA and putative class action claims by electronically signing the 2011 agreement.  (*Ruiz I*, *supra*, 232 Cal.App.4th at p. 839, fn.

3

The trial court denied MBAG's petition to compel arbitration, MBAG appealed, and in *Ruiz I* we affirmed the order denying the petition. We concluded MBAG had failed to present sufficient evidence to meet its burden of showing by a preponderance of the evidence that Ruiz was the person who electronically signed the 2011 agreement, or that the 2011 agreement existed, after Ruiz claimed in an opposing declaration that he did not recall electronically signing the 2011 agreement. (*Ruiz I*, *supra*, 232 Cal.App.4th at pp. 838, 840-842; Civ. Code, § 1633.9.)

We also concluded in *Ruiz I* that MBAG could not rely on two other arbitration agreements to support its petition—a March 4, 2010, arbitration agreement that MBAG claimed Ruiz electronically signed on March 4, 2010, as part of Ruiz's online employment application, and a March 12, 2010, arbitration agreement that MBAG claimed Ruiz signed by hand when he was hired on March 12, 2010. (*Ruiz I*, *supra*, 232 Cal.App.4th at pp. 841, 846.) We explained that MBAG's petition sought to compel arbitration based solely on the 2011 agreement, and that MBAG did not mention the 2010 agreements until it filed its reply papers. (*Ibid*.) Thus, the 2010 arbitration agreements were not properly presented to the trial court as a basis to compel arbitration of Ruiz's

_____

4.) We explained in *Ruiz I* it had "since become clear," based on our Supreme Court's holding in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 360, that the PAGA claim waiver was unenforceable (*Ruiz I*, *supra*, at p. 839, fn. 4). We also concluded it was unnecessary to determine whether the putative class action waiver in the 2011 agreement was enforceable because MBAG had not adduced sufficient evidence that Ruiz had electronically signed the 2011 agreement, which MBAG was required to do *after* Ruiz averred in his opposition declaration that he did not recall signing the September 2011 agreement. (*Id.* at pp. 839, fn. 4, 840-842, 845-846.)

4

employment-related claims, and those agreements were not properly before this court in *Ruiz I*.[4]  (*Ruiz I*, *supra*, 232 Cal.App.4th at p. 846.)

B.  *MBAG's Second Petition to Compel Arbitration and MBT's Subsequent Motion to Intervene in Case No. CIVDS2107201*

In March 2015, shortly after the remittitur issued in *Ruiz I*, MBAG filed a second petition to compel arbitration of Ruiz's individual employment-related claims.  (*Ruiz v. Moss Bros. Toy, Inc.* (Mar. 10, 2017, E063953) [nonpub. opn.] (*Ruiz II*).)[5]  In its second petition, MBAG claimed for the first time that Ruiz had been employed *by MBT*, that Ruiz had never been employed by MBAG, and that MBT, not MBAG, had entered into *all three* arbitration agreements with Ruiz—the two 2010 agreements and the 2011 agreement.  (*Id.* [at pp. 6-7].)[6]

---

[4]  The 2010 agreements did not contain waivers of the employee's right to bring putative class action or PAGA claims—unlike the 2011 agreement, which included such waivers.  (*Ruiz I*, *supra*, 232 Cal.App.4th at p. 841.)

[5]  On our own motion, we take judicial notice of our unpublished decision in *Ruiz II*.  (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

[6]  As we observed in *Ruiz II*, MBAG explained that MBT was "'a member of a dealership group, consisting of multiple, independently franchised automobile dealerships and service/parts centers, operating in Riverside and San Bernardino Counties,'" and MBT had the "'same dispute resolution program,'" namely, binding individual arbitration, "'adopted by each independently franchised automobile dealership and service/parts center in the entire group.'"  (*Ruiz II*, *supra*, E063953 [at p. 6].)  "[MBAG] thus suggested, without expressly stating, that [MBAG] was a dealership group and that MBT was one of several dealerships and service/parts centers comprising [MBAG]."  (*Id.* [at pp. 6-7].)

5

Although MBAG's second motion to compel arbitration was based on all three agreements, MBAG argued that the 2011 agreement "'should control'" because it was the "'last-in-time'" of the three agreements. (*Ruiz II*, *supra*, E063953 [at p. 7].) MBAG argued it was entitled to compel arbitration of Ruiz's employment-related claims with MBT because MBAG was "'an intended third-party beneficiary of the [three] arbitration agreements' between Ruiz *and MBT*." (*Id*. [at p. 9].)[7] MBAG wrote that it "'anticipated'" that MBT would "'file for joinder in this action' because, as Ruiz's employer, MBT had 'a direct interest in both the subject matter and arbitration of [Ruiz's] claims . . . .'" (*Ruiz II*, *supra*, E063953 [at p. 9].)

In April 2015, MBT filed an application to intervene in case No. CIVDS2107201 and to join MBAG's second petition to compel arbitration in that action. (*Ruiz II*, *supra*, E063953 [at p. 9].) Following a May 2015 hearing, the court denied MBAG's second motion to compel arbitration, noting that the motion was "'nothing more than [an untimely] renewal motion arising from the denial of [MBAG's] earlier petition . . . .'" (*Id*. [at p. 10].) The court also denied MBT's application to intervene as untimely, noting the application was "'nothing more than a thinly-veiled attempt by [MBT] to get yet another bite at the apple as to its enforcement of the 2010 and/or 2011 arbitration agreements that are at the center of this dispute.'" (*Id*. [at pp. 10-11].) The court also

---

[7] In *Ruiz II*, we observed that the March 12, 2010, agreement identified "MOSS Bros. Toyota-Scion" or MBT as the "Company" or employer of Ruiz. We also observed that both the March 4, 2010, agreement *and* the 2011 agreement used the term "Company," but neither of these agreements identified the Company or the employer as either MBT or MBAG. (*Ruiz II*, *supra*, E063953 [at p. 7].)

6

observed that MBAG and MBT were represented by the same counsel, and that in its first motion to compel arbitration MBAG adduced that MBT was Ruiz's "'actual employer,'" but MBT did not seek to intervene "'at that time.'" (*Id*. [at p. 11].)

In *Ruiz II,* we affirmed the order denying MBT's application to intervene in case No. CIVDS2107201. (*Ruiz II*, *supra*, E063953 [at pp. 12-18].) We explained that MBT had unreasonably delayed in applying to intervene, there was no excuse for the delay, and MBT did not explain why it did not seek to intervene at the outset of Ruiz's suit against MBAG in case No. CIVDS2107201. (*Id.* [at pp. 14-18].) MBT did not seek to intervene in the action until after MBAG had appealed the denial of its first petition to compel arbitration, and until after we affirmed the denial of MBAG's first petition to compel arbitration in *Ruiz I.* (*Ruiz II*, *supra*, E063953 [at p. 18].)

C. *MBT's Current Lawsuit Against Ruiz*

In September 2015, shortly after the trial court denied MBT's application to intervene in case No. CIVDS2107201, MBT filed a complaint against Ruiz in Riverside County Superior Court, case No. RIC1511040, for breach of written contract for arbitration of disputes and breach of the covenant of good faith and fair dealing. The complaint alleged Ruiz breached the March 4 and March 12, 2010, arbitration agreements by "fail[ing] to submit his employment-related disputes to binding arbitration" and by instead "fil[ing] a [c]omplaint" against MBAG for his employment-related claims in San Bernardino County Superior Court, case No. CIVDS2107201. MBT also filed a "notice of related cases," advising the Riverside County Superior Court that its newly filed action

7

in Riverside County Superior Court case No. RIC1511040 was related to San Bernardino County Superior Court case No. CIVDS2107201. Case No. RIC1511040 was transferred to San Bernardino County and was assigned, as case No. CIVDS1603069, to Judge Pacheco, the judge presiding over case No. CIVDS2107201 and who had issued the orders appealed in *Ruiz I* and *Ruiz II*. MBT moved to consolidate the two cases, but Judge Pacheco denied the motion "as an improper attempt to circumvent the Court's prior ruling on [MBT's] motion to intervene . . . ." MBT also petitioned to compel arbitration of the breach of contract and employment-related claims in both cases—this was the third motion to compel arbitration of Ruiz's individual employment-related claims—but this motion was also denied.

The court sustained Ruiz's demurrer to MBT's complaint with leave to amend, and MBT later filed the FAC. The FAC alleges three causes of action against Ruiz: breach of written contract for arbitration of disputes, breach of the covenant of good faith and fair dealing, and specific performance of MBT's arbitration contracts with Ruiz. Each cause of action is based on Ruiz's act of refusal to submit his employment-related claims to arbitration and his act of filing of his putative class action complaint against MBAG in case No. CIVDS2107201.

The FAC specifically alleges Ruiz was employed by MBT and Ruiz breached the 2010 arbitration agreements with MBT by "fail[ing] to submit his employment-related disputes" to arbitration and, "by filing a Complaint for employment-related claims

8

[against MBAG] . . . in Case No. CIVDS2107201."[8]  (Italics added.)  The FAC alleges

MBAG  is "a third-party beneficiary" of the 2010 arbitration agreements because MBAG

is MBT's agent, and an affiliate of MBT's employee benefit and health plans, and by

signing the 2010 arbitration agreements, Ruiz agreed to arbitrate all employment-related

claims against MBT and its agents and such affiliates.  Regarding damages, the FAC

alleges that, by signing the 2010 arbitration agreements, Ruiz "waived [his] right to

represent a class" or file a putative class action lawsuit on behalf of other automotive

technicians, and, as a result, MBT has incurred and will incur attorney fees, legal costs,

lost employee time, and other damages in responding to "class discovery," and an

anticipated "[m]otion for [c]lass [c]ertification."  The FAC alleges MBT may be liable

for any damages its agent, MBAG, is found liable for in case No. CIVDS2107201.

Finally, the FAC seeks specific performance of Ruiz's 2010 arbitration agreements with

MBT.

D.  *The Trial Court's Ruling on Ruiz's Anti-SLAPP Motion*

Ruiz moved to strike the entire FAC as a SLAPP (§ 425.16) along with a general

demurrer to the entire FAC (§ 430.10, subds. (e), (f)).  The court granted the anti-SLAPP

motion and deemed the demurrer moot.  In granting the anti-SLAPP motion, the court

ruled Ruiz had shown that "the alleged acts were in furtherance of his right of petition"

and MBT had failed to demonstrate a probability of prevailing on its claims as alleged in

the FAC.  MBT timely filed this appeal.  (§§ 425.16, subd. (i), 904.1.)

_____

[8]  The March 4, 2010, and March 12, 2010, arbitration agreements are attached to
the FAC as exhibits A and B, respectively.

9

## III. DISCUSSION

A. *Applicable Legal Principles and Standard of Review*

"The anti-SLAPP statute "'is designed to protect citizens in the exercise of their First Amendment constitutional rights of free speech and petition. It is California's response to the problems created by meritless lawsuits brought to harass those who have exercised these rights.'" [Citation.]" (*Century 21 Chamberlain & Associates v. Haberman* (2009) 173 Cal.App.4th 1, 6. (*Haberman*).) The anti-SLAPP statute provides: "A cause of action against a person arising from *any act of that person in furtherance of the person's right of petition or free speech* . . . shall be subject to a special motion to strike, unless the court determines . . . there is a probability that the plaintiff will prevail *on the claim*." (§ 425.16, subd. (b)(1), italics added.)

"Resolution of an anti-SLAPP motion involves two steps." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) The court first determines whether the defendant has met its burden of making a threshold showing that the challenged claim "arises from" activity protected by section 425.16. (*Ibid.*) The defendant meets this burden by showing that the "act" underlying the claim—that is, the act constituting the factual basis of the claim—fits one of the four categories of protected activities described in section 425.16, subdivision (e). (See *Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).)

If the court determines the defendant has met its threshold burden, it then determines whether the plaintiff has demonstrated a probability of prevailing on the merits of the challenged claim. (*Baral*, *supra*, 1 Cal.5th at pp. 384-385.) To meet its

10

burden, the plaintiff must state and substantiate a legally sufficient claim; it must show that the challenged claim is both legally sufficient and supported by a prima facie evidentiary showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.  (See *Navellier*, *supra*, 29 Cal.4th at pp. 88-89.)

In the anti-SLAPP context, a claim is not to be confused with a cause of action. (See § 425.16, subd. (b)(1); *Baral*, *supra*, 1 Cal.5th at p. 393.)  A claim is an act underlying a cause of action, but it is not necessarily the sole act underlying the cause of action.  (See *Baral*, *supra*, at pp. 384-393.)  This distinction is important when a cause of action is based on protected *and* unprotected activity.  Section 425.16 is designed to eliminate *only those parts of a cause of action* which are based on the defendant's protected activity and which the plaintiff cannot substantiate.  (*Baral*, *supra*, at p. 393.)

We review an order granting or denying an anti-SLAPP motion de novo.  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.)  That is, we exercise our independent judgment in determining whether the challenged claim arises from protected activity, and if so whether the plaintiff has demonstrated a probability of prevailing on the claim.  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).)  In determining whether a challenged claim arises from protected activity, we "consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."  (§ 425.16, subd. (b)(2); *Navellier*, *supra*, 29 Cal.4th at p. 89.)

11

B.  *The Entire FAC Is Based on Ruiz's Protected Right of Petition*

MBT claims none of the causes of action or claims alleged in the FAC arise from Ruiz's protected right of petition.  We disagree.  As we explain, the entire FAC is based on Ruiz's protected right of petition.  (§ 425.16, subd. (e)(1), (2).)

As noted, section 425.16 provides:  "A cause of action against a person arising from any *act of that person in furtherance of the person's right of petition or free speech* under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike . . . ."  (§ 425.16, subd. (b)(1), italics added.)  For these purposes, an "'act in furtherance of a person's right of petition or free speech'" includes the four categories of activities described in section 425.16, subdivision (e).  The relevant categories here are:  "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, . . . , (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body . . . ."  (§ 425.16, subd. (e)(1), (2).)

"A claim arises from protected activity when that activity underlies or forms the basis for the claim.  [Citations.]  Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.'  [Citations.]  '[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.'  [Citations].  Instead, the focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity

12

constitutes protected speech or petitioning.' [Citation.] 'The only means specified in section 425.16 by which a moving defendant can satisfy the ["arising from"] requirement is to demonstrate that *the defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in subdivision (e) . . . .' [Citation.] In short, in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park*, *supra*, 2 Cal.5th at pp. 1062-1063.)

Here, Ruiz's anti-SLAPP motion is directed to the entire FAC. Although the FAC alleges three causes of action, it effectively pleads a single "claim" against Ruiz for his breach of the 2010 arbitration agreements with MBT based on his refusal to submit his individual employment-related claims to arbitration and his act of *instead* filing a putative class action complaint for those claims and others against MBT's agent, MBAG, in case No. CIVDS2107201. (*Navellier*, *supra*, 29 Cal.4th at p. 92 ["The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning."].]

The FAC alleges Ruiz "breached the arbitration contracts by filing a complaint for employment-related claims" against MBAG, and if MBAG is found liable in case No. CIVDS2107201, then MBT may be liable for the actions of its agent, MBAG, even though MBT is not a named defendant in the case. The FAC seeks money damages for

13

MBT's liability, if any, in case No. CIVDS2107201, and for "legal costs, attorney fees, and time spent" by MBT's employees and officers in responding to class discovery in case No. CIVDS2107201, which the FAC alleges MBT would not have incurred if Ruiz had submitted his individual employment-related claims to arbitration as the 2010 agreements required. The FAC also seeks a judgment compelling Ruiz's specific performance of the 2010 arbitration agreements. Thus, the FAC is based entirely on Ruiz's protected act of filing the complaint against MBAG, an act Ruiz took "in furtherance of [his] right of petition. . . ." (§ 425.16, subd. (b)(1); *Navellier*, *supra*, 29 Cal.4th at p. 90 [the constitutional right of petition encompasses """"the basic act of filing litigation.""""].)

*Navellier* is instructive. There, the defendant, Sletten, entered into an agreement and a release of claims (the Release), with the plaintiffs, after the plaintiffs sued Sletten in federal district court. (*Navellier*, *supra*, 29 Cal.4th at pp. 85-86.) The plaintiffs later filed an amended complaint in the federal court action, and Sletten filed counterclaims for breach of the Release and related claims. (*Id*. at p. 86.) After the plaintiffs and Sletten lost on their respective claims in the federal court action, the plaintiffs sued Sletten in state court, "alleging that Sletten had committed fraud in misrepresenting his intention to be bound by the Release, so as to induce plaintiffs to incur various litigation costs in the federal action that they would not have incurred had they known Sletten's true intentions. Plaintiffs also alleged Sletten had committed breach of contract by filing counterclaims in

14

the federal action." (*Id*. at p. 87.) Sletten filed a special motion to strike the plaintiffs' entire complaint as a SLAPP. (*Ibid*.)

The *Navellier* court held that the plaintiffs' complaint against Sletten for breach of the Release was based on Sletten's protected act of filing his counterclaims in the federal court action. (*Navellier, supra,* 29 Cal.4th at p. 90.) The court reasoned: "Sletten is being sued *because of* the affirmative counterclaims he filed in federal court. In fact, *but for* the federal lawsuit and Sletten's alleged actions taken in connection with that litigation, plaintiffs' present claims *would have no basis*. This action therefore falls squarely within the ambit of the anti-SLAPP statute's 'arising from' prong." (*Ibid.*, italics added, fn. omitted.)

Similarly here, MBT is suing Ruiz *because of* the putative class action complaint Ruiz filed against MBAG. *But for* Ruiz's filing of the complaint against MBAG, MBT's FAC against Ruiz for breach of the 2010 arbitration agreements *would have no factual basis*, and MBT would not have incurred any of the damages the FAC alleged MBT has and will incur as a result of Ruiz's breach of the 2010 arbitration agreements and his failure to submit his individual employment-related claims to arbitration. In the language of section 425.16, Ruiz's act of filing the complaint against MBAG involved Ruiz's "statement[s] or writing[s] made before a . . . judicial proceeding" (§ 425.16, subd. (e)(1)), and "statement[s] or writing[s] made in connection with an issue under consideration or review by a . . . judicial body" (*id*., subd. (e)(2)). That is, Ruiz's act of

15

filing the complaint against MBGA involved Ruiz's protected """"basic act of filing litigation.""""" (*Navellier*, *supra*, 29 Cal.4th at p. 90.)

MBT argues the FAC is not based on Ruiz's protected right of petition, but is instead based on Ruiz's breach of the 2010 arbitration agreements and MBT's contractual right to enforce Ruiz's performance of those agreements. To be sure, the FAC is based on Ruiz's breach of the 2010 arbitration agreements and on MBT's alleged right to enforce Ruiz's performance of those agreements. But this does not mean the FAC cannot also be based, and is not also based, on Ruiz's protected right of petition or act of filing the complaint against MBAG.

The *Navellier* court rejected a similar claim. The plaintiffs in *Navellier* argued their complaint was not covered by section 425.16, but was, instead, "'a garden variety breach of contract and fraud claim.'" (*Navallier*, *supra*, 29 Cal.4th at p. 90.) As the *Navellier* court explained, this claim is based on the "false dichotomy between actions that target 'the formation or performance of contractual obligations' and those that target 'the exercise of the right of free speech.' [Citation.] A given action, or cause of action, may indeed target both. . . . [C]onduct alleged to constitute breach of contract may also come within constitutionally protected speech or petitioning." (*Id*. at p. 92.)[9]

---

[9] Following *Navellier*, other courts have recognized the false dichotomy between claims based on a defendant's breach of contract and the defendant's act of filing litigation. (E.g., *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1483-1484 ["[I]t is established that conduct alleged to constitute a breach of contract may also come within the statutory protections for protected speech or petitioning."]; *Area 51 Productions, Inc. v. City of Alameda* (2018) 20 Cal.App.5th 581, 597 [recognizing same]; *Aron v. WIB Holdings* (2018) 21 Cal.App.5th 1069, 1083.)

16

MBT's reliance on *Haberman*, *supra*, 173 Cal.App.4th 1 is misplaced. There, the plaintiffs sued Haberman for account stated, alleging she failed to pay interest on a loan, and for declaratory relief that there was no agreement to submit the account stated claim to private arbitration. (*Id.* at p. 6.) The *Haberman* court held neither claim arose from Haberman's protected activity. (*Id.* at p. 7.) Instead, the account stated claim arose from Haberman's alleged act of failing to pay interest on the loan, and the declaratory relief claim arose from Haberman's alleged act of demanding that the plaintiffs arbitrate a negligence claim against them. (*Id.* at pp. 7-8.) Regarding the declaratory relief claim, the court explained that a demand to commence private arbitration does not fall into any of the four categories of protected activity described in section 425.16, subdivision (e). (*Haberman*, *supra*, at pp. 7-9.) The court explained , "[a]rbitration is not a judicial proceeding—it is an alternative thereto[,]" and arbitration is also not an "'official proceeding authorized by law.'" (*Id.* at p. 8; § 425.16, subd. (e)(1), (2).) A demand to commence private arbitration also does not fall into the final two categories of protected activity described in section 425.16, subdivision (e), which protect "statements 'made in . . . a public forum in connection with an issue of public interest' (§ 425.16, subd. (e)(3)) and 'conduct . . . in connection with a public issue or an issue of public interest.' (§ 425.16, subd. (e)(4).)" (*Haberman*, *supra*, at p. 9.)

*Haberman* does not support MBT's argument that the FAC is based on Ruiz's breach of the 2010 arbitration agreements rather than on Ruiz's protected right of petition in filing the putative class action complaint against MBAG. Unlike the FAC, the

17

complaint in *Haberman* was not based on Haberman's protected act of filing a lawsuit. Instead, the complaint sought declaratory relief that no arbitration agreement existed, and was therefore based on Haberman's *demand for private arbitration*, which is not a protected activity. (*Haberman*, *supra*, 173 Cal.App.4th at pp. 7-9.) The FAC is not based on the unprotected act of demanding private arbitration. It is instead based on Ruiz's protected act of filing the complaint against MBAG.

MBT also relies on *City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301 (*City of Alhambra*) for the proposition that the FAC is based on Ruiz's unprotected act of refusing to arbitrate his individual employment-related claims with MBT—that is, Ruiz's breach of the 2010 arbitration agreements. *City of Alhambra* is also distinguishable. In that case the defendant, D'Ausilio, a former employee of the City of Alhambra and president of the Alhambra Firefighters' Association (AFA), sued the city for civil rights violations, and the parties entered into a settlement agreement. (*Id.* at pp. 1303-1304.) As part of the settlement agreement, D'Ausilio agreed not to "'represent, participate, or advocate for, any Alhambra employee(s)' including AFA members" for a period of approximately five years between 2007 and 2012. In October 2008, D'Ausilio allegedly breached the settlement agreement by (1) participating in an AFA meeting and advocating that AFA members join a demonstration against the city, and (2) participating in a protest by city employees against the city. (*Id.* at p. 1304.) The city sued D'Ausilio for breach of contract, money had and received, and declaratory relief that the settlement agreement was valid and D'Ausilio had breached the agreement. (*Id*. at pp. 1304-1305.)

18

D'Ausilio countersued, "seeking a nearly identical judicial declaration," and filed a special motion to strike the city's cause of action for declaratory relief. (*Id*. at p. 1305.)

The *City of Alhambra* court held that the declaratory relief claim was not based on D'Ausilio's protected activity of participating in the demonstrations against the city, but was instead based on the parties' "actual, present controversy . . . regarding the scope and enforceability" of the settlement agreement. (*City of Alhambra*, *supra*, 193 Cal.App.4th at p. 1307.) The court reasoned: "The City did not sue [D'Ausilio] because he engaged in protected speech; the City sued him because it believed he breached a contract which prevented him from engaging in certain speech-related conduct and a dispute exists as to the scope and validity of that contract." (*Id*. at p. 1308.) Here, in contrast, MBT sued Ruiz because he filed the putative class action complaint against MBAG rather than submit his individual employment related claims to arbitration.

In a subsequent anti-SLAPP case, *Mundy v. Lenc* (2012) 203 Cal.App.4th 1401 (*Mundy*), Division Two of the Second Appellate District—the same court that decided *City of Alhambra* —distinguished *City of Alhambra* as "[arising] over the enforceability and scope of a settlement agreement and not from the plaintiff's exercise of the right of petition." (*Mundy*, *supra*, at p. 1408.) The plaintiff, Mundy, a disabled person, sued Lenc, a bar owner, alleging Lenc failed to comply with the Americans with Disabilities Act (ADA; 42 U.S.C. § 12101 et seq.). (*Id*. at pp. 1404-1405.) The parties entered into a settlement agreement, which included a general release of claims and a Civil Code

19

section 1542 waiver, whereby Mundy agreed to waive unknown and unanticipated ADA claims against Lenc.  (*Mundy*, *supra*, at p. 1405.)

Despite the settlement agreement, Mundy sued Lenc a second time for another ADA violation, and Lenc cross-complained against Mundy for breach of the settlement agreement.  (*Mundy*, *supra*, 203 Cal.App.4th at p. 1405.)  Mundy moved to strike the cross-complaint as a SLAPP.  (*Ibid*.)  The *Mundy* court held the cross-complaint was based on Mundy's protected activity in filing the second ADA action against Lenc, and distinguished its decision in *City of Alhambra* as involving a "dispute . . . over the enforceability and scope of a settlement agreement and not [arising] from the plaintiff's exercise of the right of petition."  (*Mundy*, *supra*, at pp. 1408-1409.)

Like *Mundy*, other courts have recognized the critical distinction, in the anti-SLAPP context, between claims based on the protected act of filing a lawsuit and claims based *solely* or distinctly on the alleged breach of an agreement, and similar claims for declaratory relief.  For example, in *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, the court held the city's state court action against mobilehome park owners for a judgment declaring the city's rent stabilization ordinance constitutional was not based on protected activity—because the city's action was not based on the owners' protected act of filing a federal court action seeking to declare the same ordinance unconstitutional.  Instead, the city's action—indeed both parties' actions—were based on the parties' dispute concerning the constitutionality of the ordinance.  (*Id*. at p. 80.)

20

*Vivian v. Labrucherie* (2013) 214 Cal.App.4th 267 is similarly instructive. There, the plaintiff's breach of contract claims were based on the defendant's protected activity of making statements to internal affairs investigators and in family court papers—even though, by his challenged claims, the plaintiff was seeking damages for the defendant's breach of a settlement agreement "not to disparage" the plaintiff based on the defendant's protected statements. (*Id.* at pp. 270-271, 274.) Because the plaintiff was seeking to impose liability on the defendant for her acts of making protected statements, the plaintiff's action was based on protected activity. (*Id.* at p. 274.)

More recently, in *Park*, *supra*, 2 Cal.5th 1057, the high court explained that, for a claim to be based on protected activity, the protected activity "must supply the elements of the challenged claim." (*Id.* at p. 1064.) The court approved the challenged claims in *Navellier* as meeting this standard: "The defendant's [protected] filing of counterclaims constituted the alleged breach of contract," and likewise, "the defendant's misrepresentation of his intent not to file counterclaims [a protected statement made in connection with a pending judicial matter (§ 425.16, subd. (e)(1), (2))] supplied an essential element of the fraud claim." (*Park*, *supra*, at p. 1064.) The court also explained that a claim is not based on protected activity if it was filed merely *because of* protected activity, and noted the distinction between activities that form the basis of a claim and activities that "merely lead to the liability-creating activity or provide evidentiary support for the claim." (*Ibid.*)

21

Each of these standards was met here.  As discussed, the entire FAC is based on Ruiz's protected act of filing the complaint against MBAG, because Ruiz's act of filing that complaint against MBAG constitutes the entire basis of the FAC's singular breach of contract claim.  Ruiz's act of filing the complaint against MBAG does not merely provide evidentiary support for the MBT's breach of contract claim, and the FAC was not filed merely because Ruiz filed the complaint against MBAG.  (*Park*, *supra*, 2 Cal.5th at p. 1064.)  To the contrary, Ruiz's protected act of filing the complaint against MBAG constitutes the "'*conduct by which plaintiff [MBT] claims to have been injured.*'"  (*Id.* at p. 1063; *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 66.)

C. *The Federal Arbitration Act (FAA) Does Not Preempt Section 425.16*

MBT claims that section 2 of the FAA (9 U.S.C. § 2) preempts Code of Civil Procedure section 425.16 to the extent the anti-SLAPP statute can be applied to an action to compel performance of an arbitration agreement.  We disagree.  Section 2 of the FAA preempts "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."  (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339.)  Code of Civil Procedure section 425.16 does not provide a defense to arbitration, and does not derive its meaning from the fact an arbitration agreement may be in issue.  Rather, the anti-SLAPP statute applies to *all claims* that are based on acts in furtherance of protected rights of petition and free speech.  (§ 425.16, subds. (b)(1), (e); see *Navellier*, *supra*, 29 Cal.4th at p. 89.)

22

Further, and contrary to MBT's suggestion, Ruiz's filing of his complaint against MBAG did not prevent MBT from seeking to enforce Ruiz's performance of the 2010 arbitration agreements with MBT. "[T]he anti-SLAPP statute [does not] allow[] a defendant to escape the consequences of wrongful conduct by asserting a spurious First Amendment defense. [Citation.] In fact, the statute does not bar a plaintiff from litigating an action that arises out of the defendant's free speech or petitioning [citation]; it subjects to potential dismissal only those actions in which the plaintiff cannot 'state[] and substantiate[] a legally sufficient claim' [citation]. . . . [T]he statute poses no obstacle to suits that possess minimal merit." (*Navellier*, *supra*, 29 Cal.4th at p. 93.) We now turn to the question of whether the FAC possesses minimal merit.

D. *The FAC Lacks Minimal Merit*

MBT claims it met its burden on the second prong of the anti-SLAPP inquiry by establishing a probability of prevailing on its breach of contract and related claims alleged in the FAC. Again, we disagree.

To establish the probability of prevailing on a claim in response to an anti-SLAPP motion—to state and substantiate a legally sufficient claim, that is, the plaintiff "'"must demonstrate that the *complaint* is *both legally sufficient* and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."'" (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2006) 71 Cal.Comp.Cases 210, 219.)

In deciding the question of potential or minimal merit, we consider the parties' pleadings and evidentiary submissions (§ 425.61, subd. (b)(2)), but we do not weigh the credibility or comparative probative strength of competing evidence (*DaimlerChrysler Motors Co. v. Lew Williams, Inc.* (2006) 142 Cal.App.4th 344, 352). "'Thus, a plaintiff's burden as to the second prong of the anti-SLAPP test is akin to that of a party opposing a motion for summary judgment. [Citation.]'" (*Ibid*.)

The FAC alleges Ruiz breached two written arbitration agreements he entered into with his employer, MBT, on March 4, 2010, and March 12, 2010, by failing to submit his individual employment-related claims to arbitration and by instead filing the putative class action complaint for employment-related claims against MBAG in July 2012. The two 2010 arbitration agreements are attached to the FAC. The FAC seeks to compel Ruiz's specific performance of the two arbitration agreements and also seeks damages for Ruiz's breach of the two agreements.

In opposing Ruiz's anti-SLAPP motion, MBT adduced evidence of two things *and only two things*: (1) that Ruiz was employed by MBT (at some point in the past); and (2) that all expenses associated with defending Ruiz's complaint against MBAG have been and will be charged to MBT because MBT was Ruiz's employer. At the hearing on the anti-SLAPP motion, Ruiz conceded through his counsel that MBT was his employer.[10]

---

[10] Ruiz's counsel also explained that Ruiz filed his putative class action suit against MBAG, rather than MBT, because MBAG's policies applied to all of MBT's employees and "everyone" else who worked for automobile dealerships and service/parts centers in MBAG's "entire group." (See fn. 6, *ante*.)

24

But critically, MBT adduced no evidence that it entered into either of two alleged *written* 2010 arbitration agreements with Ruiz—even though each of the FAC's causes of action are based entirely on the two *written* 2010 arbitration agreements, which the FAC alleged MBT entered into with Ruiz. Put another way, MBT failed to authenticate either of the two written 2010 arbitration agreements in opposing Ruiz's anti-SLAPP motion.

"The authentication of a writing is required before it may be received in evidence," and "before secondary evidence of its content may be received in evidence." (Evid. Code, § 1401, subds. (a), (b).) "Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law." (Evid. Code, § 1400.)[11]

Because MBT adduced no evidence that it entered into either of the two written 2010 arbitration agreements with Ruiz—that is, that either of the two agreements were what the FAC alleged they were (Evid. Code, §§ 1400, 1401), MBT failed to meet its burden on the second step of the anti-SLAPP inquiry of showing that any of the FAC's causes of action had minimal merit. It is therefore unnecessary to address Ruiz's

---

[11] In *Ruiz I*, we noted that Ruiz signed the March 12, 2010, arbitration agreement by hand. (*Ruiz I*, *supra*, 232 Cal.App.4th at p. 841, fn. 6.) But the evidence that Ruiz signed the March 12, 2010, arbitration agreement by hand, which MBAG adduced for the first time in its reply papers on its first motion to compel arbitration of Ruiz's claims in case No. CIVDS2107201, was not presented to the trial court in opposition to Ruiz's anti-SLAPP motion in *this action*. Thus, that evidence is not before us in this appeal.

25

additional arguments concerning why MBT failed to meet its burden on the second prong of the anti-SLAPP inquiry.[12]

## IV.  DISPOSITION

The order granting Ruiz's special motion to strike MBT's FAC is affirmed.  Ruiz shall recover his costs of suit.  (Cal. Rules of Court, rule 8.278.)

CERTIFIED FOR PARTIAL PUBLICATION

FIELDS          

J.

We concur:

CODRINGTON        

           Acting P. J.

SLOUGH           

         J.

---

[12]  Among other things, Ruiz claims MBT "cannot establish a valid breach of contract claim" against Ruiz because "no legal authority" permits "a defendant-employer to recruit affiliated entities to harass plaintiff-employees after they successfully oppose petitions to compel arbitration."  Ruiz does not argue MBT is collaterally estopped from asserting the claims alleged in the FAC based on the actions of MBT's agent, MBAG, in case No. CIVDS2107201.  In any event, it is unnecessary to address these questions because MBT failed to show it had any arbitration agreement with Ruiz.  As noted in *Ruiz I*, "'In California, "general principles of contract law determine whether the parties have entered a binding agreement to arbitrate,"' and the party seeking arbitration bears the burden of proving the existence of an arbitration agreement.  [Citation.]"  (*Ruiz I, supra,* 232 Cal.App.4th at p. 842.)