Filed 1/31/25  Frye v. Fore the Ladies CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| STEVE FRYE et al., | D083759 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2023-00005945-CU-CR-NC) |
| FORE THE LADIES, INC. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County, Cynthia A. Freeland, Judge.  Affirmed.

Allen L. Lanstra, Mayra T. Aguilera, Michelle E. Portillo, and Sophia M. Difilippo for Defendants and Appellants.

Law Offices of Daniel J. Williams and Daniel J. Williams for Plaintiffs and Respondents.

Steve Frye and Alex Maystrenko (together, Respondents) sued Fore the Ladies, Inc. (FTL) and its founder, Abby Liebenthal (together, Appellants),[1]

---

[1] Respondents also sued Goat Hill Park, LLC and 21 other individuals and vendors.  These parties did not join the motion to strike.

on behalf of themselves and all others similarly situated alleging causes of action under the Unruh Civil Rights Act (the Unruh Act) (Civil Code § 51) and Civil Code section 51.5.  Specifically, Respondents alleged Appellants discriminated against them as men when they "created, organized, advertised, marketed, promoted, employed, hosted, held, incited, and/or aided in women-only golf events at Goat Hill Park in Oceanside, California, on or about June 13, 2021."

In response, Appellants filed a special motion to strike under Code of Civil Procedure[2] section 425.16[3] arguing that the conduct alleged in the complaint arose from protected activity.  Specifically, they alleged the conduct involved "public statements and activity in furtherance of free speech rights connected to issues of public interest—namely, addressing the inequality in golf that denies women opportunities in the workplace, in addition to needed access to athletics generally."  The trial court denied the motion, and Appellants appealed.

Appellants argue the court erred in finding that their anti-SLAPP motion failed to identify the specific causes of action they were challenging and in concluding Respondents' causes of action did not arise out of protected activity.  We agree that Appellants sufficiently identified the causes of action

---

[2]    Statutory references are to the Code of Civil Procedure unless otherwise indicated.

[3]    Section 425.16 is commonly referred to as the anti-SLAPP statute because a special motion thereunder seeks to strike a " '[s]trategic lawsuit against public participation,' " or SLAPP.  (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 882, fn. 2 (*Wilson*).)  The Legislature authorized anti-SLAPP motions "[t]o combat lawsuits designed to chill the exercise of free speech and petition rights."  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060 (*Park*).)

they were challenging.  However, because we do not otherwise find fault with the court's ultimate determination, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*The Complaint*

As previously noted, Respondents' primary allegation is that Appellants "created, organized, advertised, marketed, promoted, employed, hosted, held, incited, and/or aided in women-only golf events at the golf course commonly known as Goat Hill Park in Oceanside, California, on or about June 13, 2021."  They allege Appellants advertised the women-only golf events on social media pages[4] and on www.eventbrite.com (Eventbrite).

The Eventbrite advertisement stated:

> "We're heading to Goat Hill Park to introduce you to the game of golf! Join us for an afternoon of drinks, instruction & more!
>
> "**About this event**
>
> "Fore the Ladies is heading to the San Diego area!  If you've never picked up a golf club or have minimal experience with the game, but want to give it a try — this event is for you!  We know there will be something for everyone at this $40 event, hosted at the legendary Goat Hill Park.
>
> "We'll warm up with some bevs and light introductory instruction from the pros.  They'll show you the basics of the game so you can decide if you'd like to continue your journey with golf!

---

[4]     The record does not contain evidence of what was posted on social media sites, which sites were used, or who had access to these posts. Respondents' declarations also do not indicate that they viewed any social media pages or posts.

3

"Don't have golf clubs?  No problem, we'll have sets on hand for you to try.

"For more info on Fore the Ladies, visit our website [here].

"**Who is this event for?**

"• Women who have never played golf or have minimal experience with the game

"• Women who don't have access to a country club or regular spot to try the game

"• Women who love golf and want to hang with others/find a new playing partner!

"• Women who want to give golf a try with an open mind in a social atmosphere

"**Thank you to our Fore the Ladies Clinic supporters!**

Frye and Maystrenko both saw Appellants' advertisement and claim they "desired and intended to participate in the event."  On or about February 11, 2021, Frye contacted Appellants via e-mail to ask if the event was just for women, or if he could join in too.  Appellants responded by stating:  "Thanks for reaching out and your interest in attending our FTL event!  At this time, we are going to leave it only open to women.  If we reach the week of and there are spots remaining, we will open it up."  Respondents allege that, "[a]s such, [Appellants] . . . excluded [Respondents] from participating in the women-only golf event that took place on June 13, 2021."

On or about June 9, 2021, Frye claims he contacted Defendant Goat Hill Park, LLC, and Defendant Eli Ivey, via e-mail to ask if the June 13, 2021 event was just for women, or if he could participate.  Respondents allege these defendants responded that "[u]nfortunately the event is only fore the ladies."  There is no evidence FTL or Liebenthal were included in this e-mail exchange.

4

Based on this conduct, Respondents allege Appellants excluded them "from receiving the same full and equal accommodations, advantages, facilities, privileges, or services that [Appellants] . . . provided only to women at the women-only golf event that occurred on June 13, 2021" and "discriminated against and denied [Respondents] on the basis of their sex, gender, and/or gender identity." They further assert Appellants' "actions in relation to their women-only golf events were intentional, arbitrary, unreasonable, malicious, and/or invidious discrimination in violation of Civil Code §§ 51 and 51.5."

## II.

### *The Anti-SLAPP Motion*

In their anti-SLAPP motion, Appellants rely on Liebenthal's declaration to explain that FTL is an Ohio nonprofit corporation focused on addressing longstanding gender inequality in golf. Although Liebenthal had played since childhood, she found that the overwhelming majority of golfers were male. Liebenthal said she had met more and more women who wanted to learn how to play but faced obstacles, lack of opportunity, and intimidation. She created FTL in 2019 "to advocate for the role of women in golf, 'introduc[e] more women' to the game, and bring women together to play, watch and participate in everything golf has to offer with the hope that golf becomes 'more accessible and approachable while removing the expected barriers such as cost, intimidation and access.' "

FTL has a board of directors but no paid employees. It has a weekly podcast and holds meetups and clinics. According to Liebenthal, the organization's work has been written about in notable publications.

Liebenthal explained that the Oceanside Event was an introduction to golf for beginners. The event occupied just a portion of the Goat Hill driving

5

range for two hours, leaving the remainder of the range and all of the eighteen-hole golf course open to the public. Participants paid $40 and were provided a large bucket of golf balls. The vendor area was open to the public, and male and female participants and non-participants visited the booths.

Appellants pointed out that neither Frye nor Maystrenko attended the event, and Frye never followed up with Appellants in response to Liebenthal's e-mail to inquire whether spots remained.

In Appellants' view, the complaint arises from protected activity because the allegations concern statements made in a public forum—social media sites and the Eventbrite website—in connection with an issue of public interest or involve conduct in furtherance of the exercise of Appellants' free speech rights. They assert that golf inequality has been a matter of public interest for decades and cite to several sources. Specifically, they attach: (1) Title IX of the Education Amendments Act of 1972, which they characterize as an anti-discrimination law focused on disparate treatment of women that legislatively promotes equalizing the opportunities for women in sports; (2) a report from the U.S. Department of Labor's Federal Glass Ceiling Commission, established in 1991 to focus on "eliminating artificial barriers to the advancement of women" and "increasing the opportunities and developmental experiences of women . . . to foster advancement . . . to management and decisionmaking positions in business" (Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071); (3) information about San Diego's Commission on the Status of Women, which focuses on alleviating the inequities women face in social and business pursuits; (4) A Miami University and the University of Cincinnati study which dubbed the lack of female access to golf the "Grass Ceiling" because golf and country clubs have historically been female-exclusionary and created a platform for businessmen

6

to establish rapport and engage in friendly business interactions outside the office;[5] and (5) a study explaining that golf's history has resulted in women on a golf course appearing unusual and obvious. They also highlight the 2004 "Fair Play Act," which states the Legislature's intent that girls be accorded athletics opportunities "equal, both in quality and scope, to those accorded to boys." (Gov. Code, § 53080, subd. (e).)

According to Liebenthal, everything FTL does is in furtherance of free-speech activity directed to this issue of public interest (golf inequality).[6]

### III.

*The Order on the Anti-SLAPP Motion*

Following a hearing, the court denied the motion. It found the motion deficient because Appellants failed to sufficiently identify the specific causes of action they were challenging. Even if the court construed the motion as challenging both causes of action, it concluded Appellants had not met their burden of demonstrating that the challenged causes of action arose from protected activity. It determined that the "gravamen" of the complaint was that Appellants allegedly discriminated against Respondents and the class by precluding them from participating in women's-only golf events. Appellants' use of websites and social media to advertise did not form the basis of Respondents' claims, but rather were merely ancillary actions that purportedly led to the liability-creating activity. Because the court found

---

[5]     They add that CEOs who golf also are less likely to include women on their executive team.

[6]     Appellants also argued at length in their motion that Respondents could not demonstrate a probability of success on the merits. Because the court did not reach this issue and Appellants do not ask us to address it on appeal, we will omit facts related to this portion of the motion.

7

Appellants had not met their burden, it did not address whether Respondents could demonstrate a likelihood of prevailing on the challenged causes of action.

## DISCUSSION[7]

"[T]he anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.] To that end, the statute authorizes a special motion to strike a claim 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' " (*Wilson, supra*, 7 Cal.5th at pp. 883–884.)

"Litigation of an anti-SLAPP motion involves a two-step process. First, 'the moving defendant bears the burden of establishing that the challenged

[7] We note at the outset that Respondents attempt to renew and incorporate by reference the objections they made below to Appellants' evidence. They also claim to incorporate by reference the memorandum of points and authorities, declarations, notice of lodgment, and exhibits they filed with the trial court in opposition to Appellants' initial anti-SLAPP motion. They offer no authority that permits such incorporation and nothing in the California Rules of Court allows this practice. To the contrary, California Rules of Court, rule 8.204(a)(1)(B) requires that appellate briefs "support each point by argument and, if possible, by citation of authority." Additionally, as our high court has made clear, "[i]t is well settled that the Court of Appeal does not permit incorporation by reference of documents filed in the trial court." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 294, fn. 20; see also *Guarino v. County of Siskiyou* (2018) 21 Cal.App.5th 1170, 1179 ["An 'appellant may not simply incorporate by reference arguments made in papers filed in the trial court, rather than briefing them on appeal' "].) The same is true for objections. Although objections may be preserved for appeal if the lower court did not rule on them, the burden is on the proponent to renew their objections on appeal by advancing relevant argument. (*White v. Smule, Inc.* (2022) 75 Cal.App.5th 346, 353, fn. 2.) Accordingly, we disregard these purported incorporations by reference.

8

allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit." ' [Citation.] If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).) At the first step, we only " 'review[ ] the parties' pleadings, declarations and other supporting documents to determine what conduct is actually being challenged, not to determine whether the conduct is actionable.' " (*People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 822.) If the defendant fails to meet its burden at the first step, we need not address the second step.

I.

*Failure to Identify the Challenged Causes of Action*

The trial court concluded as a threshold matter that the motion could be denied on the grounds that Appellants failed to sufficiently identify the specific causes of action they were challenging. Appellants dispute this conclusion, asserting that they may and did move to strike the entire complaint.

An anti-SLAPP motion may be directed at an entire complaint. (See *Navellier v. Sletten* (2002) 29 Cal.4th 82, 87; *Moss Bros. Toy, Inc. v. Ruiz* (2018) 27 Cal.App.5th 424, 434.) However, the focus remains on "the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier*, at p. 92.) In their motion, Appellants identified the relevant acts as "statements made on social media and on the publicly accessible website Eventbrite.com" and also mentioned, although not in the argument portion of

9

their motion, the e-mail exchange with Frye.[8] The trial court expressed concern during the hearing that Appellants did not clearly explain which of the activities alleged in the complaint (e.g. creating, organizing, advertising, marketing, hosting, holding, etc. the women-only golf event) were the subject of the motion. While we understand the court's concern, and Appellants could have been clearer in addressing this issue below, the motion did contain facts highlighting the discrepancy between the expansive list of actions listed in the two causes of action and the more limited factual allegations targeted only to Appellants' advertisement, website, and e-mail. Appellants' counsel also confirmed during the hearing that they did seek to strike the entire complaint. Thus, there was some basis in the record for understanding that, although Appellants sought to dismiss the entire complaint, they had not addressed all the actions alleged (again, creating, organizing, hosting, holding, etc.) because they did not believe the facts related any of this conduct to harm actually suffered by Frye or Maystrenko.

Furthermore, as our high court has explained, if a party fails to sufficiently specify which subparts of a cause of action it seeks to strike, the problem is resolved by "attention to the allocation of the applicable burden of proof. If a cause of action contains multiple claims and a moving party fails to identify how the speech or conduct underlying some of those claims is protected activity, it will not carry its first-step burden as to those claims." (*Bonni, supra*, 11 Cal.5th at p. 1011.) Because it is undisputed that Respondents did not attend the event, which does make it unclear how some

---

[8] Given that Appellants did, at least, identify these acts from the complaint and provide argument as to why they were protected, we decline Respondents' invitation to find forfeiture based on Appellants' failure in the initial motion to identify "each paragraph or sentence in the complaint that comprises a challenged claim" and to explain the claim's elements.

of these verbs apply to their claims, we conclude Appellants sufficiently identified the causes of action they were challenging.  Thus, we now consider whether Appellants have met their burden of showing that these allegations arose from protected activity.

## II.

### *Anti-SLAPP Analysis*

The anti-SLAPP statute identifies four categories of protected activity. (§ 425.16, subd. (e)(1)–(4).)  Appellants invoke two of them.  Section 425.16, subdivision (e)(3) protects "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." (*Id*., subd. (e)(3).)  Subdivision (e)(4) covers "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (*Id*., subd. (e)(4).)  "We determine de novo whether any of the acts from which challenged claims arise are protected under these provisions." (*Bonni, supra*, 11 Cal.5th at p. 1009.)

"A claim arises from protected activity when that activity underlies or forms the basis for the claim.  [Citations.]  Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.'  [Citations.]  '[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.' " (*Park, supra*, 2 Cal.5th at pp. 1062–1063.)  In making this determination, the court looks at what actions by the defendant supply the elements of the challenged claim and " 'whether that activity constitutes protected speech or petitioning.' " (*Id.* at p. 1063.)

11

A.     *The "Gravamen" Test*

Our Supreme Court has made clear that, whether the defendant seeks to strike the entire cause of action or merely parts of it, the proper focus is on the specific actions by the defendant.  In so doing, the court rejected the gravamen test "to determine the essence or gist" of a cause of action because employing such a test would "risk saddling courts with an obligation to settle intractable, almost metaphysical problems about the 'essence' of a cause of action that encompasses multiple claims." (*Bonni, supra*, 11 Cal.5th at pp. 1011–1012.)  Here, the court concluded that the gravamen of the complaint was that Appellants discriminated against Respondents and other men and nonbinary persons based on their sex, gender, and/or gender identity by precluding them from participating in a women's-only golf event in violation of the Unruh Act.[9]  Appellants contend this was error.

Although our high court rejected the gravamen test when it is used to summarize the gist of a cause of action, the court acknowledged that not every court that continues to label its approach the gravamen test has erred. (*Bonni, supra*, 11 Cal.5th at p. 1012.)  The term may be used "to determine whether particular acts alleged within the cause of action supply the elements of a claim [citation] or instead are incidental background." (*Ibid.*)

---

9     "The purpose of the [Unruh] Act is to create and preserve 'a nondiscriminatory environment in California business establishments by "banishing" or "eradicating" arbitrary, invidious discrimination by such establishments.' [Citations.] 'The Act stands as a bulwark protecting each person's inherent right to "full and equal" access to "all business establishments." [Citations.]'  In enforcing the Act, courts must consider its broad remedial purpose and overarching goal of deterring discriminatory practices by businesses.  [Citations.]  We have consistently held that 'the Act must be construed liberally in order to carry out its purpose.' " (*White v. Square, Inc.* (2019) 7 Cal.5th 1019, 1025.)

Such incidental or collateral background allegations are not subject to section 425.16. (*Bonni*, at p. 1012.) In other words, " 'Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute.' " (*Ibid.*) We therefore conclude the trial court did not err in its reference to the "gravamen" of Respondents' claims.

B. *Respondents' Discrimination Claims Do Not Arise from Protected Activity*

In denying the anti-SLAPP motion, the trial court relied on the holding of *Park, supra*, 2 Cal.5th 1057. Citing *Park*, the trial court explained: "Defendants' use of websites and/or social media to advertise women's-only golf events does not form the basis of Plaintiffs' claims – they are merely ancillary actions that purportedly led to the liability-creating activity, *i.e.*, discrimination based on sex, gender, and/or gender identity."

We conclude that the trial court correctly applied *Park*. In *Park*, a professor alleged that he had been denied tenure based on his national origin. The employer responded with an anti-SLAPP motion, arguing that its decision to deny tenure and numerous communications leading up to and following the decision were protected communications. (*Park, supra*, 2 Cal.5th at p. 1061.) The Supreme Court disagreed that the professor's lawsuit was based on protected activity. It concluded that "in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claims and what actions by the defendant supply those elements and consequently form the basis for liability." (*Id.* at p. 1063.) The court noted that the elements of the plaintiff's discrimination claim did not depend on any communications "but only on the denial of tenure itself and whether the motive for that action was impermissible." (*Id.* at p. 1068.) The court explained: "The tenure decision may have been communicated orally or in

13

writing, but that communication does not convert Park's suit to one arising from such speech. The dean's alleged comments may supply evidence of animus, but that does not convert the statements themselves into the basis for liability." (*Ibid.*)

More broadly, the Supreme Court held that "a claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity. Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park, supra*, 2 Cal.5th at p. 1060.)

In reaching this conclusion, the Supreme Court cited multiple Court of Appeal opinions distinguishing between protected "activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim." (*Park, supra*, 2 Cal.5th at pp. 1064–1067.) One of the cases the Supreme Court discussed was *Nam v. Regents of University of California* (2016) 1 Cal.App.5th 1176.[10] (*Park*, at p. 1066.) After summarizing the holding of *Nam*, the Supreme Court in *Park* concluded: "*Nam* illustrates that while discrimination may be carried out by means of speech, such as a written notice of termination, and an illicit animus may be evidenced by speech, neither circumstance transforms a discrimination suit to one arising from speech." (*Ibid.*)

As the trial court concluded, *Park* is controlling here. The basis for Respondents' claims is the Appellants' alleged conduct in holding golf events

---

[10] The Supreme Court later disapproved of *Nam* on other grounds in *Wilson, supra*, 7 Cal.5th at p. 892.

for women only, not their speech promoting or publicizing those events. Respondents are suing on behalf of themselves and a putative class of male and non-binary persons who were allegedly denied the same accommodations, advantages, privileges, or services provided to women in the women-only golf events sponsored by Appellants. The complaint alleges that this unequal treatment based on sex, gender, or gender identity violates the Unruh Act and Civil Code section 51.5. Whatever the merits of these discrimination claims, the trial court correctly ruled that they are not subject to the anti-SLAPP statute under the holding of *Park, supra*, 2 Cal.5th at pp. 1065–1066. *Park* made clear that although discrimination may be evidenced or carried out or communicated by means of speech, that does not transform a discrimination suit into one arising from speech. (*Park*, at p. 1066.)

As the Supreme Court has since emphasized, the holding of *Park* means it is a "relatively unusual case in which the discrimination or retaliation defendant *does* meet its first-step burden of showing that its challenged actions qualify as protected activity . . . ." (*Wilson, supra*, 7 Cal.5th at p. 891, italics added; see also *id*. at p. 890 ["Cases that fit that description are the exception, not the rule"].) In *Wilson*, for example, a television news network's decision to terminate an employee for plagiarism was protected activity in furtherance of its speech rights as a news organization, even though the plaintiff alleged discrimination. (*Id*. at pp. 897–898.) By contrast, this is a more typical case of discrimination not asserted against an entity whose core mission is speech.

Appellants contend that their protected activity supplies the basis for Respondents' discrimination claims because the only acts supporting Respondents' claims are that Appellants advertised and emailed concerning a

15

women-only golf event; Respondents were deterred from participating in the June 13, 2021 event solely by the advertising and email; neither Respondent actually attempted to participate in the event; the vendor area was open to men; and three spots remained open in the clinic on the day of the event.

We are not convinced. None of this alters the fact that Respondents are suing over alleged discrimination by Appellants in excluding men and non-binary people from their golf events. The advertising and emails may supply evidence of the alleged discrimination, and they may be the means of carrying out or communicating or publicizing the alleged discrimination, but speech is not the actual basis for the discrimination claim and does not "supply elements of the challenged claim." (*Park, supra*, 2 Cal.5th at p. 1064.) "What gives rise to liability is not that the defendant spoke, but that the defendant denied the plaintiff a benefit, or subjected the plaintiff to a burden, on account of a discriminatory or retaliatory consideration." (*Id.* at p. 1066.) And to the extent Appellants are arguing that Respondents could in fact have participated if they had showed up on the day of the June 13, 2021 golf event, that goes to the merits of the discrimination claims rather than the basis for them.

We conclude that Respondents' discrimination claims are not subject to the anti-SLAPP statute because they do not arise from Appellants' protected activity. Accordingly, we affirm the trial court's order denying the anti-SLAPP motion without deciding whether Appellants' speech was made in connection with an issue of public interest or whether Respondents showed a probability of prevailing on their claims.

DISPOSITION

The order is affirmed. Respondents are entitled to their costs on appeal.

HUFFMAN, Acting P. J.

WE CONCUR:


IRION, J.


BUCHANAN, J.

17