Filed 7/22/21 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE ex rel. ALLSTATE INSURANCE COMPANY,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>SONNY RUBIN et al.,<br><br>  Defendants and Appellants. | G059446<br><br> (Super. Ct. No. 30-2019-01101013)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |

This court hereby orders that the opinion filed herein on June 28, 2021, be modified as follows:

1. On page 1, third full paragraph, first line, the name "Know Ricksen" is deleted and replaced with "Knox Ricksen."

2. On page 2, second full paragraph, fifth line, delete the word "its" after the word "of" and replace with "his."

3. On page 2, third full paragraph, fourth line, delete the word "its" after the word "show" and replace with "his."

4. On page 2, third full paragraph, fourth line, delete the word "its" after the word "of" and replace with "his."

5. On page 3, second full paragraph, sixth line, delete the word "its" after the word "in" and replace with "his."

6. On page 4, after first full paragraph, add the following new paragraph:

In July 2020, Rubin filed a reply. Rubin attached a second declaration in which he averred, in part, "all of the medical reports prepared by me, and the bills prepared by my biller, are provided to the patient and the patient's attorney for use in the patient's pending or anticipated personal injury lawsuit."

7. On page 9, first full paragraph, second line, delete the word "its" after the word "for" and replace with "his."

8. On page 9, third full paragraph, second line, delete the word "[its]" after the word "because" and replace with "[his]."

9. On page 9, last incomplete paragraph, starting with the word "But" delete last two paragraphs and footnote 2, and replace with the following paragraphs:

We disagree. Again, the *Anapol* court held that the submission of an insurance claim is ordinarily not a protected activity under the anti-SLAPP statute, unless the defendant first establishes that litigation with the insurance company is under serious consideration and is more than theoretical. (*Anapol*, *supra*, 211 Cal.App.4th 809.)

Here, it does not matter if Rubin's lien patients were submitting insurance claims with Allstate based on their own coverage policies (first party claims), or if they were submitting insurance claims based on the liability policies of alleged tortfeasors (third party claims). In either case, Rubin failed to establish—as a matter of law—that the subject medical reports and bills were prepared outside of Rubin's usual course of business, and that his lien patients' litigation with Allstate was more than a "'possibility.'" (See *Mission Beverage Co. v. Pabst Brewing Co., LLC*, *supra*, 15 Cal.App.5th at p. 703; see also *Smith v. Adventist Health System/West*, *supra*, 190 Cal.App.4th at p. 52 [in the first prong of the anti-SLAPP analysis we accept as true the evidence favorable to the plaintiff and evaluate the defendant's evidence to determine if it

has defeated that submitted by the plaintiff as a matter of law].)  Indeed, Rubin averred "all of the medical reports prepared by me, and the bills prepared by my biller, are provided to the patient and the patient's attorney for use in the patient's *pending or anticipated* personal injury lawsuit." (Italics added.)

This modification does not change the judgment.  The petition for rehearing is DENIED.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


FYBEL, J.

Filed 6/28/21; Certified for Publication 7/12/21 (order attached) (unmodified opinion)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE ex rel. ALLSTATE INSURANCE COMPANY, <br><br>     Plaintiff and Respondent, <br><br>       v. <br><br> SONNY RUBIN et al., <br><br>     Defendants and Appellants. | G059446 <br><br> (Super. Ct. No. 30-2019-01101013) <br><br> O P I N I O N |

Appeal from an order of the Superior Court of Orange County, William D. Caster, Judge.  Affirmed.

Khouri Law Firm, Michael J. Khouri and Behzad Vahidi, for Defendants and Appellants.

Know Ricksen, Thomas E. Fraysse and Maisie C. Sokolove, for Plaintiff and Respondent.

\*        \*        \*

Strategic Lawsuits Against Public Participation (SLAPP suits) are meritless lawsuits designed to punish parties for constitutionally protected activities (free speech or the right to petition). A defendant can seek to strike a SLAPP suit by filing an anti-SLAPP motion. (Code Civ. Proc., § 425.16.)[1] The analysis is two-fold: usually the defendant must first show the lawsuit arises from its protected activities; if so, the plaintiff can defeat the anti-SLAPP motion by showing its lawsuit has merit.

Allstate Insurance Company et al. (Allstate) filed a complaint on behalf of itself and the People (qui tam) against Dr. Sonny Rubin and related medical providers (Rubin). Allstate generally alleged Rubin prepared fraudulent patient medical reports and billing statements in support of insurance claims. Rubin filed an anti-SLAPP motion, arguing the preparation and submission of its medical reports and bills were protected litigation activities. The trial court denied Rubin's motion.

Litigation is not "under [serious] consideration"—and thereby protected activity under the anti-SLAPP statute—if the ligation is merely a "'possibility.'" (*Mission Beverage Co. v. Pabst Brewing Co., LLC* (2017) 15 Cal.App.5th 686, 703.) Here, Rubin failed to show its medical reports and bills were prepared outside of its usual course of business in anticipation of litigation that was "under [serious] consideration." (*Ibid.*)

Thus, we affirm the trial court's order denying Rubin's anti-SLAPP motion.


I

FACTS AND PROCEDURAL BACKGROUND

Dr. Sonny Rubin is a physician who controls two medical companies (Sonny Rubin, M.D., Inc., and Coastal Spine and Orthopedic Specialists, Inc.). A portion of Rubin's practice involves "lien patients" involved in automobile accidents who are

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

referred by attorneys. Lien patients have signed a "medical lien" authorizing their attorney "to pay directly to [Rubin] such sums as may be due and owing . . . and to withhold such sums from any settlement, judgment, or verdict as may be necessary to pay for" the patient's treatment (this case only involves lien patients). After providing medical treatment for lien patients, Rubin prepares "medical narrative reports, operative reports, and billing statements to be used in support of claims for insurance benefits under policies of insurance issue by [Allstate.]"

*Court Proceedings*

In September 2019, Allstate filed a complaint on behalf of itself and the People of the State of California (qui tam). The complaint pleaded two causes of action: insurance fraud and unfair competition. Allstate generally alleged Rubin violated the law by: "Presenting or causing to be presented false or fraudulent claims for the payment of a loss of injury under a contract of insurance[.]" (Ins. Code, §1871.7; Pen. Code, §§ 549, 550.) Allstate specifically alleged Rubin recommended unnecessary medical treatments, falsely represented it had treated injuries, engaged in deceptive billing practices, and prepared false invoices for insurance claims. According to Allstate, Rubin "engaged in a conspiracy, scheme, or plan to prepare and present false, fraudulent, and/or misleading narrative reports, operative reports, and billing statements . . . in support of, or in connection with" claims against Allstate and other insurers.

In March 2020, Rubin filed an anti-SLAPP motion. Rubin averred in a declaration that his "lien patients" are "currently seeking a personal injury claim and [are] therefore represented by an attorney for the purposes of litigation." Rubin understood that he is "authorized to send the patient's medical reports and statements of diagnosis, treatment, etc., to the patient's attorney to be used in the patient's personal injury case." Rubin argued in its motion to strike that "preparing and providing to the patient's attorney the necessary documents supporting the medical services provided on a lien,

3

falls within the definition of prelitigation activities" under the anti-SLAPP statute.

In June 2020, Allstate filed an opposition. Under the first step of the analysis, Allstate argued "the submission of insurance claims, even where litigation ultimately [arises], does not constitute protected conduct under the anti-SLAPP statute." Allstate filed a declaration from a claims investigator: "From 2012 through the present, Plaintiffs received a minimum of 639 claims for payment under contracts of insurance in which services were provided by [Rubin]. Rubin's billing statements, narrative reports, operative reports, and other medical records were submitted to Allstate to support payment of those claims. This number is conservative, as Plaintiffs continue to receive claims associated with Dr. Rubin." Alternatively, Allstate argued it was likely to prevail on the merits.

In October 2020, the trial court ruled "Rubin has failed to establish that Allstate's claims arise from protected activity. Accordingly, the Court need not reach step two of the anti-SLAPP analysis and the special motion to strike is denied."

II

DISCUSSION

Rubin appeals from the trial court's ruling that Rubin failed to establish Allstate's insurance fraud claim does arise from Rubin's protected litigation activity under the anti-SLAPP statute. We review the court's ruling de novo. (*Moss Bros. Toy, Inc. v. Ruiz* (2018) 27 Cal.App.5th 424, 433 ["we exercise our independent judgment in determining whether the challenged claim arises from protected activity"].)

Under the anti-SLAPP statute, a defendant ordinarily has the burden of establishing a plaintiff's claims arise from its protected activity; if the defendant met its burden, the burden shifts to the plaintiff to establish its claims have merit. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061.) A reviewing court considers the pleadings, the supporting and opposing affidavits, and accepts as true

4

the evidence favorable to the plaintiff and evaluates the defendant's evidence to determine if it has defeated that submitted by the plaintiff as a matter of law.  (*Smith v. Adventist Health System/West* (2010) 190 Cal.App.4th 40, 52.)

"A cause of action against a person *arising from* any act of that person in furtherance of the person's right of petition or free speech . . . shall be subject to" an anti-SLAPP motion.  (§ 425.16, subd. (b)(1), italics added.)  As relevant here, an "'act in furtherance of a person's right of petition . . .' includes:  (1) any written or oral statement or writing *made before a* legislative, executive, or *judicial proceeding*, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection *with an issue under consideration or review* by a legislative, executive, or *judicial body* . . . ."  (§ 425.16, subd. (e), italics added.)

Prelitigation communications may constitute protected activity, but only if those communications are "relate[d] to litigation that is contemplated in good faith and under serious consideration."  (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251.)  Litigation is not "under [serious] consideration" if it is only a "'possibility.'"  (*Mission Beverage Co. v. Pabst Brewing Co., LLC*, *supra*, 15 Cal.App.5th at p. 703.)  Statements made in connection with issues that later become subject to consideration or review in litigation may be protected under the anti-SLAPP statute, but only where such prelitigation statements were made in good faith anticipation of litigation under serious consideration at the time the statements were made.  (*Bailey v. Brewer* (2011) 197 Cal.App.4th 781, 790.)

"Thus, for example, when a cause of action arises from conduct that is a 'necessary prerequisite' to litigation, but will lead to litigation only if negotiations fail or contractual commitments are not honored, future litigation is merely theoretical rather than anticipated and the conduct is therefore not protected prelitigation activity."  (*Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 941.)

The submission of claims to an insurer for payment in the regular course of

5

business prior to the commencement of litigation is not an act "in furtherance of the right of petition" within the meaning of the anti-SLAPP statute. (*People ex rel. 20th Century Ins. Co. v. Building Permit Consultants, Inc*. (2000) 86 Cal.App.4th 280, 283-284 (*BPC*).) In *BPC*, a company prepared earthquake damage reports to help "individuals in compiling and preparing repair estimates." (*Id*. at p. 282.) The court held that this was not protected activity under the anti-SLAPP statute: "Here, the damage reports were sent to 20th Century Insurance to demand performance on the insurance contract. At the time defendants created and submitted their reports and claims, there was no 'issue under consideration' pending before any official proceeding. If we protect the reports and claims under section 425.16 because they eventually could be used in connection with an official proceeding, we would effectively be providing immunity for any kind of criminal fraud so long as the defrauding party was willing to take its cause to court. Defendants have cited nothing to us that demonstrates the anti-SLAPP law embraces such actions. We are satisfied it does not." (*Id*. at p. 285.)

The filing of purportedly false insurance claims is also generally not protected right-to-petition activity under the anti-SLAPP statute. (*People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809 (*Anapol*).) In *Anapol*, two attorneys represented property owners that had filed smoke and ash damage claims against insurance companies arising from California wildfires. (*Id*. at p. 814.) An insurance company filed a qui tam lawsuit, alleging many of the attorneys' insurance claims were false or inflated. (*Ibid*.) The attorneys filed an anti-SLAPP motion to strike, arguing the insurance claims were protected prelitigation communications because they had been submitted as necessary prerequisites to anticipated lawsuits. (*Ibid*.) The trial court denied the motion and the appellate court affirmed. (*Id*. at p. 815.)

The *Anapol* court held the submission of purportedly false insurance claims ordinarily does not constitute petitioning activity under the anti-SLAPP statute, unless circumstances show litigation is more than theoretical and is "genuinely contemplated.

6

[Citation.] The requirement guarantees that hollow threats of litigation are not protected." (*Anapol*, *supra*, 211 Cal.App.4th at p. 824.) In the insurance context, those circumstances may exist if: 1) an attorney submits a claim after negotiations with an insurance company have been unsuccessful; or 2) if an attorney submits a demand letter threatening to file a lawsuit after an insurance company has denied a claim (and the insured is so informed). (*Id*. at pp. 824, 827.)

"That possibility of litigation in the event of nonperformance is not enough to conclude the claim is made in anticipation of litigation contemplated in good faith and under serious consideration." (*Anapol*, *supra*, 211 Cal.App.4th at p. 828.) Under the facts in *Anapol*, the appellate court held that attorneys' subjective expectations of litigation were not sufficient to establish protected litigation conduct: "We believe that an insurance claim cannot be transformed from a simple claim for payment submitted in the usual course of business into protected prelitigation conduct solely on the basis of the subjective intent of the attorney submitting the claim . . . ." (*Id*. at p. 829.) Thus, the court held the attorneys did not make a sufficient showing and the insurance claims were not protected conduct under the anti-SLAPP statute. (*Id*. at p. 830.)

In this case, in his anti-SLAPP motion to strike Allstate's allegations of insurance fraud, Rubin declared the medical lien form authorizes him "to send the patient's medical reports and statements of diagnosis, treatment, etc., to the patient's attorney to be used in the patient's personal injury case." But as stated by the trial court: "There are several problems with this argument. First, the language of the form medical lien contemplates payment 'from any *settlement*, judgment, or verdict.' (1st Rubin Decl., Ex. A [emphasis added].) Like . . . *Anapol*, the settlement reference acknowledges the possibility that Rubin's patients will resolve their claims without resort to court. That the patients have retained attorneys to pursue their claims is of no moment. In *Anapol*, the Court of Appeal recognized that even communications directly from attorneys were unprotected if they were attempts to resolve claims without filing suit.

7

"Second, like . . . *Anapol*, Rubin's argument hinges on his subjective understanding of the purpose of his reports and bills. Rubin offers no testimony from patients stating that they intended the bills to be evidence of damages in litigation, nor testimony from patients' attorneys stating, e.g., 'I only referred a client to Dr. Rubin when litigation would be necessary to recover the cost of that client's medical treatment.'

"Third, while Rubin argues that his reports and bills are prepared to be used in litigation, doctors regularly prepare notes or reports and bill for their treatment. Nothing about them is unique to the litigation context. Absent testimony from Rubin that he did *not* prepare medical reports for his non-lien patients or that he did *not* prepare bills for his non-lien patients, the Court is left to conclude that the documents were prepared in the regular course of business and therefore are not protected activity. (See *Anapol*, *supra*, 211 Cal.App.4th at p. 827 ['"[t]he submission of contractual claims for payment *in the regular course of business*' is not an act in furtherance of the right of petition'"] [emphasis original.] [*quoting Kajima Engineering and Const., Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 932].)

"A review of Rubin's claims about billing further supports this conclusion [that its written reports were prepared in the regular course of business]. The purpose of a bill is to recover payment owed. Rubin's bills might eventually become evidence of damages in personal injury litigation, and Rubin may expect that payment will come from the proceeds of that litigation. But the bills themselves are an accounting of services rendered for which Rubin expects payment. The form medical lien states that 'payment for medical services rendered by said Doctor is *not contingent upon* any settlement, judgment, or verdict.' [1st Rubin Decl., Ex. A [emphasis added.] The patient is responsible for the bill no matter what happens—whether he litigates his case, settles it, or chooses to abandon his claim entirely. The invoices were documents prepared in the regular course of business to secure payment for services rendered."

We agree with the cogent analysis of the trial court. Rubin has failed to provide evidence establishing the written medical reports or billing statements for its lien patients were made "in anticipation of litigation contemplated in good faith and under serious consideration." (*Anapol*, *supra*, 211 Cal.App.4th at p. 827.) Rubin's preparation of medical reports and bills in support of insurance claims against Allstate were apparently his routine and usual course of business, which may or may not have resulted in litigation (as were the insurance claims in *Anapol*, *supra*, 211 Cal.App.4th at p. 827). That is, unless negotiations with Allstate failed, or Allstate denied a demand for payment, litigation was simply a possibility, and that "possibility" of litigation does not rise to protected prelitigation activity under the anti-SLAPP statute. (See *Mission Beverage Co. v. Pabst Brewing Co., LLC*, *supra*, 15 Cal.App.5th at p. 703 [litigation is not "under [serious] consideration" if it is only a ""'possibility'""].)

In sum, Rubin has failed to establish that Allstate's claims arise from Rubin's protected right-to-petition activity. (*Smith v. Adventist Health System/West*, *supra*, 190 Cal.App.4th at pp. 51-52.) Accordingly, we need not reach step two of the analysis under the anti-SLAPP statute. (See § 425.16.) Thus, we affirm the trial court's denial of Rubin's special motion to strike.

Rubin argues this case "is patently distinguishable from *Anapol*, because [its] medical reports and bills were not submitted to demand performance under a contract of insurance between the patients and Allstate. Rather the complained of medical reports and bills were prepared for, and used in, *personal injury claims and lawsuits* against third party tortfeasors who happened [to] be insured by Allstate."

But in his declaration in support of his anti-SLAPP motion, Rubin failed to make a factual claim that his allegedly fraudulent medical reports and billing records were related strictly to third party tortfeasors who happened to be insured by Allstate, and

9

that fact does not appear in the record.[2]  Further, the medical lien form attached to Rubin's anti-SLAPP motion fails to distinguish between first party claims, which are purely contractual in nature, and third party personal injury claims, which are arguably more likely to concern litigation that is "under [serious] consideration."  (See *Mission Beverage Co. v. Pabst Brewing Co., LLC*, *supra*, 15 Cal.App.5th at p. 703.)

Therefore, neither Rubin's declaration, nor the medical lien form, support Rubin's contention that his alleged conduct qualified as protected third party litigation activity under the anti-SLAPP statute as a matter of law.  (See *Smith v. Adventist Health System/West*, *supra*, 190 Cal.App.4th at p. 52 [a reviewing court considers the pleadings, the supporting and opposing affidavits, and accepts as true the evidence favorable to the plaintiff and evaluates the defendant's evidence to determine if it has defeated that submitted by the plaintiff as a matter of law].)

---

[2] In his reply to Allstate's opposition to the anti-SLAPP motion, Rubin attached a second declaration in which Rubin averred:  "I have never prepared any medical reports or had bills prepared by my biller for a patient who is insured by Allstate, so that the medical report or bill could be submitted to Allstate under a contract of insurance between the patient and Allstate."  But the trial court sustained Allstate's objection to Rubin's second declaration and Rubin has not challenged the trial court's evidentiary ruling on appeal.  (See *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1537-1538 ["The general rule of motion practice, which applies [on an anti-SLAPP motion], is that new evidence is not permitted with reply papers"].)

## III

## DISPOSITION

The order is affirmed.  Costs on appeal are awarded to Allstate.[3]


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


FYBEL, J.

---

[3] Allstate requested attorney fees on appeal, arguing Rubin's appeal is frivolous.  (See §§ 425.16, 128.5 ["'[f]rivolous' means 'totally and completely without merit' or 'for the sole purpose of harassing an opposing party'"].)  Although we find Rubin's appeal to be meritless, we would not characterize it as frivolous.  Thus, we deny Allstate's request.

11

Filed 7/12/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE ex rel. ALLSTATE INSURANCE COMPANY, <br><br>     Plaintiff and Respondent, <br><br>       v. <br><br> SONNY RUBIN et al., <br><br>     Defendants and Appellants. | G059446 <br><br> (Super. Ct. No. 30-2019-01101013) <br><br> ORDER GRANTING REQUEST FOR PUBLICATION |

Attorney Matthew J. Smith, Coalition Against Insurance Fraud, has requested that our opinion filed on June 28, 2021, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.

MOORE, J.

WE CONCUR:


O'LEARY, P. J.


FYBEL, J.

1