Filed 7/28/21  Ghafoori v. Advance Occupational and Hand Therapy Center CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WAJIA GHAFOORI,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>ADVANCE OCCUPATIONAL AND HAND THERAPY CENTER,<br><br>　　Defendant and Appellant. | G059486<br><br>(Super. Ct. No. 30-2019-01117435)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Layne H. Melzer, Judge.  Reversed and remanded with directions.

Anderson, McPharlin & Conners and Elmira R. Howard for Defendant and Appellant.

Law Offices of Mark B. Plummer and Mark B. Plummer for Plaintiff and Respondent.

\*　　　\*　　　\*

## INTRODUCTION

After losing her first case against Advance Occupational and Hand Therapy Clinic (Advance), Wajia Ghafoori filed another case against Advance, seeking indemnity from Advance based on the same facts in the first case, and seeking recovery of the attorney fees and costs Ghafoori incurred in that case. Advance filed a special motion to strike the second case under Code of Civil Procedure section 425.16[1] (the anti-SLAPP motion) (all further statutory references are to the Code of Civil Procedure). The trial court denied the anti-SLAPP motion. We reverse and remand with directions to the trial court to grant the motion.

First, Ghafoori's complaint in the present case arises directly from Advance's protected petitioning activity, because the petitioning activity—the cross-claim Advance filed against Ghafoori in the first case—is itself the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.

Second, Ghafoori failed to establish her claims in the second case have at least minimal merit.

## STATEMENT OF FACTS

The following summary of the facts is drawn from our unpublished opinion *Ghafoori v. Rezaei*, June 10, 2021, G058984:

"Advance is a physical therapy and occupational therapy clinic. Rezaei is a physical therapist employed by Advance. Ghafoori received physical therapy treatments at Advance from May through June and September through November 2014. This case does not involve any allegations of negligent treatment by Advance or any of its employees.

---

[1] SLAPP is an acronym for strategic lawsuit against public participation. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1109, fn. 1.)

"On September 25, 2014, Ghafoori was involved in an automobile accident. Attorney Plummer and Plummer Law represented Ghafoori in a lawsuit arising out of that accident.

"The medical lien, which was signed by Ghafoori on November 19, 2014, reads in relevant part as follows: 'I hereby authorize and direct you, my attorney, to pay directly to [Advance] such sums as may be due and owing him for medical services rendered me by reason of this accident and by reason of any other bills that are due his office and withhold such sums from any settlement, judgment or verdict as may be necessary to adequately protect [Advance]. And I hereby further give a lien on my case to [Advance] against any and all proceeds of any settlement, judgment [or] verdict which nay be paid to you, my attorney, or myself as the result of the injuries for which I have been treated or injuries in connection therewith. [¶] I fully understand that I am directly and fully responsible to [Advance] for all medical bills submitted by him for service rendered me and that this agreement is made solely for [Advance]'s additional protection and in consideration of his awaiting payment. And I further understand that such payment is not contingent on any settlement, judgment or verdict by which I may eventually recover said fee.' Plummer Law, by signing the lien on November 20, 2014, agreed to observe all of its terms and to withhold from any settlement or judgment the money necessary to reimburse Advance.

"Between December 2014 and March 2015, Advance provided Ghafoori with 24 physical therapy sessions with a reasonable value of $5,300, and 20 occupational therapy sessions with a reasonable value of $5,900. Advance provided copies of its bills and Ghafoori's medical records to Plummer Law.

"Plummer Law, on behalf of Ghafoori, made a $52,362.80 settlement demand on State Farm Mutual Auto Insurance Co. (State Farm), the insurance carrier for the other driver involved in the accident, to settle Ghafoori's personal injury claims. The demand letter represented to State Farm that Ghafoori had incurred $11,200 in medical

3

expenses owed to Advance for physical therapy and occupational therapy.  State Farm and Ghafoori settled the claim for $27,100.  None of the settlement proceeds was paid to Advance.

"After Rezaei, on behalf of Advance, asked Attorney Plummer whether Ghafoori's case had been settled, 'Plummer became agitated and started yelling at me telling me that I did not have a medical lien and that he and his client had no obligation to pay Advance for the treatments.'  Advance responded by filing a complaint against Attorney Plummer and Plummer Law with the California State Bar.

"Ghafoori and Plummer Law filed a complaint against Rezaei and Advance; Ghafoori and Plummer Law asserted a claim for rescission of the medical lien, and Ghafoori asserted claims for fraud and unfair business practices.  Advance filed a cross-complaint against Ghafoori, Attorney Plummer, and Plummer Law for breach of the medical lien, unfair business practices, breach of an implied contract, quantum meruit, and money had and received.

"Rezaei filed a motion for summary judgment and/or summary adjudication of the complaint, and Advance filed a similar motion for summary judgment and/or summary adjudication of the complaint and the cross-complaint.  The trial court (1) granted Rezaei's motion for summary judgment, (2) granted Advance's motion for summary adjudication of all issues on the complaint, and (3) denied Advance's motion for summary adjudication on the cross-complaint.

"On February 3, 2020, a judgment was entered in favor of Rezaei and against Ghafoori and Plummer Law (the February 3 judgment).  No appeal has ever been taken from the February 3 judgment.

"Advance, Ghafoori, Plummer Law, and Attorney Plummer stipulated in writing for entry of judgment in favor of Advance on Advance's cross-complaint.  The trial court approved the stipulation, and judgment based on it was entered.  On March 3, 2020, an amended judgment was entered against Ghafoori and Plummer Law and in favor

4

of Advance on the complaint, and in favor of Advance and against Ghafoori, Plummer Law, and Attorney Plummer on the cross-complaint (the March 3 judgment).

"On March 12, 2020, Ghafoori and Plummer Law filed a notice of appeal from the March 3 judgment. Attorney Plummer did not file a notice of appeal." (*Ghafoori v. Rezaei, supra,* G058984.)

## PROCEDURAL HISTORY

A hearing on the summary judgment motion in the underlying case was conducted on November 18, 2019. Although the tentative ruling does not appear in the appellate record, the transcript of the hearing makes clear that the tentative was to grant the motion as to the mediation privilege.

On December 10, 2019, while the ruling on the summary judgment in the underlying case was pending, Ghafoori sued Advance in the present case for indemnity and declaratory relief. On February 14, 2020, Advance filed the anti-SLAPP motion pursuant to section 425.16. After briefing and a hearing, the trial court denied the anti-SLAPP motion on the ground that Ghafoori's complaint did not arise out of protected activity. Advance timely appealed.

## DISCUSSION

### I.

### STANDARD OF REVIEW

"Review of an order granting or denying a motion to strike under section 425.16 is de novo. [Citation.] We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' [Citation.] However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.'" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

5

## BURDENS OF PROOF

"Anti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged. [Citations.] If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.' [Citations.]" (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).)

"[A] claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity. Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park, supra,* 2 Cal.5th at p. 1060.)

"A claim arises from protected activity when that activity underlies or forms the basis for the claim. [Citations.] Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.' [Citations.] '[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.' [Citation.] Instead, the focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' [Citation.] 'The only means specified in section 425.16 by which a moving defendant can satisfy the ["arising from"] requirement is to demonstrate that *the defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in subdivision (e) . . . .' [Citation.] In short, in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant

supply those elements and consequently form the basis for liability." (*Park, supra,* 2 Cal.5th at pp. 1062-1063.)[2]

What is the conduct of Advance by which Ghafoori claims to have been injured? In the complaint, Ghafoori seeks express contractual indemnity "for any and all *damages and injuries resulting from Advance[']s claim against her* for $11,200.00 for 'Covered Services' . . . pursuant to . . . the ancillary services contract" between CalOptima and Advance. (Italics added.) Advance contends that the alleged wrongful conduct is its filing of a cross-complaint against Ghafoori to collect on the medical lien, which is a protected activity.

## II.

### GHAFOORI'S COMPLAINT ARISES FROM ADVANCE'S PROTECTED PETITIONING ACTIVITY

As the first part of the two-step process, we address whether the complained-of acts in Ghafoori's complaint arise out of protected activity. Several recent appellate opinions have addressed situations where a plaintiff seeks indemnity, but where the action complained of is protected activity. We apply and follow *Moss Bros. Toy, Inc. v. Ruiz* (2018) 27 Cal.App.5th 424 (*Moss Brothers*), *C.W. Howe Partners, Inc. v. Mooradian* (2019) 43 Cal.App.5th 688 (*C.W. Howe*), *Wong v. Wong* (2019) 43 Cal.App.5th 358 (*Wong*), and *Long Beach Unified School Dist. v. Margaret Williams, LLC* (2019) 43 Cal.App.5th 87 (*Williams*) and conclude that, here, the conduct complained of is Advance's filing of the cross-complaint in the underlying lawsuit, which is an act in furtherance of Advance's right of petition or free speech. (§ 425.16, subd. (b).) We now survey and apply those cases.

---

[2] *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871 (*Wilson*) applied *Park*'s analysis in the context of a complaint for employment discrimination and retaliation.

7

A.

RELEVANT CASE LAW

1. *Moss Brothers*

In *Moss Brothers, supra*, 27 Cal.App.5th 424, Moss Brothers (the employer) sued its former employee for filing a lawsuit against Moss Brothers' local agent rather than submitting his employment-related claims to arbitration, as required by an employment arbitration agreement. (*Id.* at p. 427.) The trial court granted the employee's anti-SLAPP motion. The employer argued on appeal that the underlying action was based on the employee's breach of the arbitration agreement, not on alleged protected activity. (*Ibid.*) The appellate court affirmed the judgment in favor of the employee, concluding that the employer's lawsuit was based on the employee's action of filing a lawsuit against the employer's agent, even though the employer's lawsuit also purported to be based on the employee's breach of the arbitration agreement. (*Ibid.*)

The appellate court concluded that the employer's lawsuit was based entirely on the employee's protected act of filing the complaint against the employer's local agent, an act in furtherance of the employee's right of petition. (*Moss Brothers, supra*, 27 Cal.App.5th at p. 434.) The court noted that the employer's complaint alleged the employee had breached his employment contract by filing his own complaint, the employer could be liable for the acts of its agent in the underlying litigation, the employer's lawsuit sought damages due to its liability and attorney fees and costs incurred in the underlying litigation, and the employer's lawsuit sought specific performance of the arbitration agreement. (*Ibid.*) The court also noted that "'[b]*ut for*'" the employee's protected action of filing a complaint, the employer's lawsuit against the employee for breach of contract "'*would have no factual basis*'" and the employer would not have incurred any of the damages it was seeking. (*Id.* at p. 435.) The fact that the employer's lawsuit was based on the employee's alleged breach of contract for failure to pursue arbitration did not mean it was not also based on the employee's protected right of

8

petition. (*Id.* at pp. 435-436; see *Navellier v. Sletten* (2002) 29 Cal.4th 82, 90-92 (*Navellier*).)

The *Moss Brothers* court further explained that its conclusion was consistent with the Supreme Court's elements-based analysis in *Park, supra,* 2 Cal.5th 1057 because: (1) the employer's lawsuit was based on the employee's "protected act of filing the complaint" against the employer's agent because the employee's act of filing his complaint constituted the entire basis of the employer's singular breach of contract claim; (2) the employee's act of filing his complaint did more than merely provide evidentiary support for the employer's breach of contract claim; and (3) the employee's "protected act of filing the complaint . . . constitutes the '"*conduct by which* [*the employer*] *claims to have been injured*."'" (*Moss Brothers, supra*, 27 Cal.App.5th at p. 439.)[3]

### 2. *C.W. Howe*

In *C.W. Howe, supra,* 43 Cal.App.5th 688, Howe provided structural engineering services to the homeowners, the Mooradians, pursuant to a written contract that included an indemnity provision. (*Id.* at pp. 692-693.) The Mooradians sued Howe and others for, inter alia, fraud and negligent breach of contract. (*Id.* at p. 694.) Howe filed a cross-complaint against the Mooradians for indemnity. (*Id.* at p. 695.) The Mooradians responded with an anti-SLAPP motion (*id.* at p. 696), which the trial court denied (*id.* at p. 697).

The appellate court affirmed, concluding that the indemnity cross-complaint did not arise from the Mooradians' petitioning activity. The court reasoned:

---

[3] The trial court did not cite *Moss Brothers, supra*, 27 Cal.App.5th 424, in its minute order denying the anti-SLAPP motion, as neither party cited that case in their motion papers in the trial court.

"[A] cause of action arising from the defendant's . . . litigation activity directly implicates the right to petition and is subject to a special motion to strike. . . . [¶] But to satisfy the first prong, the Mooradians had to establish the Howes' causes of action 'arise from' the Mooradians' litigation activity; and they misunderstand the analysis employed to determine whether a claim arises from protected conduct. The 'elements' analysis as articulated by the Supreme Court in *Park, supra*, 2 Cal.5th at page 1063 and adopted in *Wilson, supra*, 7 Cal.5th at page 884 does not mean any allegation of protected activity supporting an element of a cause of action subjects that cause of action to a challenge under section 425.16. Courts should only consider the elements of the challenged cause of action as part of an analysis to determine what actions by the defendant form the basis for liability. As cautioned by the *Park* court, in the first step of the anti-SLAPP analysis, care must be taken 'to respect the distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim.' [Citation.] As discussed, the Supreme Court in both *Park* and *Wilson* made clear 'the speech or petitioning activity *itself*' must constitute 'the wrong complained of.' [Citations.]

"The filing of the Mooradians' first amended complaint is not the wrongful act forming the basis for the Mooradians' liability as alleged in the Howes' cross-claims. Rather, the alleged wrongful act that forms the basis for the express indemnity cause of action is the Mooradians' failure to indemnify, defend and hold harmless the Howes in breach of section 4(b) of the Howe agreement, including to indemnify the Howes from any liability arising from the use of the EPS panels selected by the Mooradians or the Mooradians' representative Minarc." (*C.W. Howe, supra*, 43 Cal.App.5th at pp. 700-701.)

The court in *C.W. Howe* distinguished the Supreme Court's opinion in *Navellier* and the Court of Appeal's opinion in *Moss Brothers*:

10

"*Navellier, supra*, 29 Cal.4th 82 illustrates the difference. In *Navellier* the Supreme Court held a claim for breach of a release clause in a contract was subject to section 425.16 because the alleged breach consisted of asserting claims in litigation (in a counterclaim in a federal lawsuit that had been initiated prior to the release agreement) that had purportedly been released under the contract: 'In alleging breach of contract, plaintiffs complain about Sletten's having filed counterclaims in the federal action. Sletten, plaintiffs argue, "counterclaimed for damages to recover money for the very claim he had agreed to release a year earlier" and "was sued for that act."' [Citations.]

"Similarly, in *Moss* [*Brothers, supra*,] 27 Cal.App.5th 424 the petitioning activity itself constituted the alleged breach. In that case an employer filed a breach of contract action against an employee alleging the employee had breached two arbitration agreements by failing to submit his employment-related disputes to arbitration, instead filing a putative class action complaint in superior court against the employer. The trial court granted the employee's special motion to strike. [Citation.] In affirming, the Court of Appeal relied, among other cases, on *Vivian v. Labrucherie* (2013) 214 Cal.App.4th 267, where a motion pursuant to section 425.16 successfully challenged a breach of contract action that had alleged protected activity constituted the breach: 'There, the plaintiff's breach of contract claims were based on the defendant's protected activity of making statements to internal affairs investigators and in family court papers . . . . Because the plaintiff was seeking to impose liability on the defendant for her acts of making protected statements, the plaintiff's action was based on protected activity.' [Citation.] Unlike the plaintiffs in *Navellier* and *Moss* [*Brothers*], the Howes did not allege in their cross-complaint that by filing their lawsuit the Mooradians had breached the Howe agreement or otherwise engaged in wrongful activity." (*C.W. Howe, supra,* 43 Cal.App.5th at pp. 701-702.)

11

3. *Wong*

In *Wong, supra*, 43 Cal.App.5th 358, the marital settlement agreement between Wong and Tang provided that Wong would transfer to Tang his ownership in an entity owning commercial property and would indemnify Tang for "'any liabilities attendant thereto.'" (*Id.* at p. 361.) The marital settlement agreement also provided that if either party had incurred an undisclosed liability, that party would indemnify the other for the obligation, costs and attorney fees. (*Ibid.*) After both parties to the marital settlement agreement died, the commercial property entity had to pay off a $5 million promissory note. (*Id.* at p. 362.) The commercial property entity sued Wong's estate to recoup the $5 million (the Asian Square litigation), and Wong's estate filed a separate lawsuit against Tang's estate for breach of contract and express and equitable indemnity to require Tang's estate to indemnify Wong's estate for the costs and liabilities in the Asian Square litigation. (*Ibid.*) Tang's estate filed an anti-SLAPP motion, claiming that as the holder of the controlling interest in the commercial property entity, it had directed and funded the Asian Square litigation, meaning the indemnity litigation by Wong's estate was based on the Tang estate's protected petitioning activity. (*Ibid.*) The trial court denied the anti-SLAPP motion. (*Id.* at pp. 362-363.)

The appellate court affirmed. "The Tang Estate has not been sued for pursuing the Asian Square litigation but for breaching its obligation to indemnify the Wong Estate for expenses incurred in that litigation." (*Wong, supra*, 43 Cal.App.5th at p. 365.)

4. *Williams*

In *Williams, supra*, 43 Cal.App.5th 87, Williams and the school district entered an agreement under which Williams performed construction management and environmental compliance consulting work. (*Id.* at p. 92.) The agreement contained a provision by which Williams agreed to indemnify and hold harmless the school district. (*Id.* at pp. 94-95.) After the school district terminated the agreement, Williams sued the

district for retaliatory termination, breach of contract, and negligence.  (*Id.* at p. 94.)  The school district tendered the defense of the complaint to Williams; when she ignored the tender, the school district field a cross-complaint for indemnity and breach of contract.  (*Id.* at p. 95.)  Williams then filed an anti-SLAPP motion, arguing that the school district's cross-claims arose from her protected activity of filing the complaint.  (*Ibid.*)  The trial court granted the motion, and the appellate court affirmed.  (*Id.* at p. 96.)[4]

The appellate court concluded that the cross-claims arose from the complaint, which was protected activity.  (*Williams, supra*, 43 Cal.App.5th at p. 97.)  Even under the school district's argument that the cross-claims arose from Williams's refusal to defend and indemnify the district under the terms of the agreement, the appellate court concluded that the claims would still have arisen under protected activity: "A refusal to fund the defense of one's own litigation—and the defense of a co-plaintiff's claims arising from the same facts—is conduct in furtherance of the litigation."  (*Id.* at p. 99.)

*Williams* distinguishes *C.W. Howe* and *Wong* thus:

"Neither *C.W. Howe*[, *supra*,] 43 Cal.App.5th 688 nor *Wong*[, *supra*,] 43 Cal.App.5th 358 calls for a different conclusion.  The *C.W. Howe* court, disagreeing with our analysis of the first ground for our first-step holding, rejected indemnitors' contention that cross-claims seeking defense and indemnity in the indemnitors' litigation arose from that underlying litigation.  [Citation.]  But the court proceeded to expressly distinguish its opinion from ours on the second ground for our first-step holding, viz., our conclusion that Williams LLC's refusal to defend and indemnify the District—from which the District's crossclaims concededly arose—was protected conduct in furtherance of petitioning activity in connection with an issue of public interest.  [Citation.]

---

[4]  Although the *Williams* court does not cite *Park*, it cites and relies on *Wilson, supra,* 7 Cal.5th 871, which uses the same elements-based analysis as *Park*.

13

"*Wong* is distinguishable for the same reason.  The indemnitor there could not claim an issue of public interest was at stake in the underlying litigation, in which a corporation that owns and operates a shopping mall sought recovery of allegedly misappropriated loan proceeds from the estate of a former shareholder.  [Citation.]  In any event, the *Wong* court did not address whether the indemnitor's refusal to indemnify the indemnitee was protected conduct in furtherance of petitioning activity in connection with an issue of public interest.  [Citation.]  Thus, *Wong* is not authority on that issue.  [Citation.]"  (*Williams, supra,* 43 Cal.App.5th at p. 100, fn. 7.)

B.

*UNDER THE FOREGOING AUTHORITIES, WE CONCLUDE GHAFOORI'S COMPLAINT ARISES OUT OF ADVANCE'S PROTECTED PETITIONING ACTIVITY*

In the present case, we conclude that the conduct of Advance by which Ghafoori claims to have been injured is Advance's filing of a cross-complaint in the underlying action.  (*Park, supra*, 2 Cal.5th at p. 1063.)  Ghafoori's complaint in this case seeks as damages "complete indemnity for any and all damages and injuries resulting from [Advance's] claim against her for $11,200.00 for 'Covered Services', which had been provided in 2014 and 2015, to [Ghafoori]."  Ghafoori also sought a declaration that Advance was "obligated to indemnify and hold [Ghafoori] harmless from all injuries and damages resulting from [Advance's] claim against her for $11,200.00."  Although the complaint attempts to focus on Advance's failure to comply with the ancillary services agreement between Advance and CalOptima, the "claim against her for $11,200.00" is Advance's cross-claim in the underlying litigation.  That cross-complaint sought damages of $11,200.  In this case, we follow and apply *Moss Brothers*, *Williams*, and *Navellier*.  In the present case, the petitioning activity itself constituted the alleged breach of the ancillary services agreement alleged in Ghafoori's complaint.  Advance therefore established the first prong of the anti-SLAPP test.

14

## III.

### GHAFOORI FAILED TO ESTABLISH A PROBABILITY OF PREVAILING ON THE MERITS

At the second step of the anti-SLAPP analysis, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.) At this step, the plaintiff must establish the claims based on allegations of protected activity are legally sufficient and supported by a prima facie showing of facts, which, if proved at trial, would support a judgment in the plaintiff's favor. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 713-714.) To meet this burden, the plaintiff must present admissible evidence. (*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 112.)

### A.

### *GHAFOORI'S EVIDENCE OF LIKELIHOOD OF PREVAILING ON THE MERITS OF HER CLAIM*

In opposition to the anti-SLAPP motion, Ghafoori offered admissible evidence of the following: (1) Ghafoori was a Medi-Cal/CalOptima member at all relevant times; (2) Ghafoori had been receiving covered services from Advance before her automobile accident; (3) Ghafoori continued receiving covered services from Advance after her automobile accident; (4) Advance presented Ghafoori with a medical

15

lien, which both Ghafoori and her counsel signed; (5) Advance did not bill Medi-Cal/CalOptima for services provided to Ghafoori after she signed the medical lien.[5]

B.

*GHAFOORI'S CLAIM WILL BE BARRED BY THE RULE AGAINST SPLITTING CLAIMS*

Assuming the truth of all of Ghafoori's evidence, we must nevertheless conclude that Ghafoori has failed to establish that her claims have at least minimal merit. In *Ghafoori v. Rezaei, supra*, G058984, we concluded that the trial court properly granted summary judgment as to Ghafoori's claims against Advance and Rezaei arising out of the services provided to Ghafoori by Advance after Ghafoori's automobile accident. The present lawsuit involves further claims by Ghafoori against Advance arising out of the services provided to Ghafoori by Advance after Ghafoori's automobile accident.

"It is clearly established that a party may not split up a single cause of action and make it the basis of separate suits, and in such case the first action may be pleaded in abatement of any subsequent suit on the same claim. [Citations.] The rule against splitting a cause of action is based upon two reasons: (1) That the defendant should be protected against vexatious litigation; and (2) that it is against public policy to permit litigants to consume the time of the courts by relitigating matters already judicially determined, or by asserting claims which properly should have been settled in some prior action." (*Wulfjen v. Dolton* (1944) 24 Cal.2d 891, 894-895.)

The rule against splitting causes of action bars claims in a second action seeking a different remedy for the same injury alleged in the first action. (*Mycogen*

---

[5] Ghafoori also offered the fact that Advance billed her directly for the services provided, and that Ghafoori owed nothing on the medical lien, pursuant to *Parnell v. Adventist Health System/West* (2005) 35 Cal.4th 595. Although on an anti-SLAPP motion the court does not weigh the evidence, these facts have been determined against Ghafoori in our unpublished opinion *Ghafoori v. Rezaei, supra*, G058984, and are therefore the law of the case. The ancillary services agreement and the medical lien speak for themselves; we are not required to place on them the meanings ascribed by Ghafoori.

16

*Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 897.)  Under California's primary rights theory, "the invasion of one primary right gives rise to a single cause of action."  (*Slater v. Blackwood* (1975) 15 Cal.3d 791, 795.)  And a cause of action "is based upon the harm suffered, as opposed to the particular theory asserted by the litigant."  (*Ibid.*)

Here, judgment was entered against Ghafoori in the underlying action and the trial court expressly ruled that by signing the medical lien, Ghafoori had elected to be treated outside of her insurance.  The trial court rejected Ghafoori's argument that the ancillary services agreement between Advance and CalOptima prevented Advance from recovering under the medical lien.  The trial court also found that Ghafoori's claimed belief that Advance would bill and be paid by CalOptima for the physical therapy and occupational therapy services she received was not supported by the evidence or the express language of the medical lien.  This court recently affirmed that judgment.  The complaint filed by Ghafoori in the present action is barred, and Ghafoori therefore cannot establish any likelihood of prevailing on her lawsuit.

### DISPOSITION

The order denying the anti-SLAPP motion is reversed.  We remand to the trial court with directions to grant the motion.  Appellant to recover costs on appeal.


FYBEL, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


GOETHALS, J.

17